[Civ. No. 22282. Fourth Dist., Div. One. Nov. 25, 1980.]

STATE FARM FIRE AND CASUALTY COMPANY,
Plaintiff and Respondent, v.
GARY ALSTADT, a Minor, etc., Defendant and Appellant.

**COUNSEL**

Berger, Kahn, Shafton & Moss, Anthony E. Shafton and Craig S. Simon for Defendant and Appellant.

Portigal & Hammerton, Barry L. Allen and Mary L. Kading for Plaintiff and Respondent.

**OPINION**

**COLOGNE, Acting P. J.**—Gary Alstadt, by his guardian ad litem Jeanne R. Martin (Gary), appeals an adverse judgment in the declaratory relief action brought by State Farm Fire and Casualty Company (State Farm), seeking a declaration that under the personal liability coverage provisions of a homeowner's insurance policy it issued, State Farm owes no duty to Gary or his brother Daniel to defend Gary's personal injury and wrongful death lawsuit against Daniel or to make any settlement or pay any money in connection with that lawsuit and the policy.

Gary's personal injury and wrongful death action against Daniel stems from Daniel's murder on February 22, 1975, of the boys' father and mother, William and Maxine, and his commission of intentional torts against Gary. At the time the parents had a "HOMEOWNERS POLICY" with State Farm. Both boys were "resident relatives" within the policy's terms, residing in the parents' household.[1]

---

[1]Though we recite only certain relevant facts stipulated to by the parties for purposes of this declaratory relief action alone, we note our familiarity with this tragic case and the severity of Gary's injuries (see record and opinion in 4 Crim. No. 4225).

The policy in force at all times pertinent to this action is an exhibit before us in this proceeding. It names the parents and shows their address under the heading "INSURED'S NAME AND MAILING ADDRESS." The policy details coverage for personal liability and medical payments beginning on page six and reads as follows:

"SECTION II
"_____COVERAGES_____

"COVERAGE E—PERSONAL LIABILITY:

"This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence....

"COVERAGE F—MEDICAL PAYMENTS TO OTHERS:

"This company agrees to pay all reasonable medical expenses, incurred within one year from the date of the accident, to or for each person who sustains bodily injury to which this insurance applies caused by an accident, while such person is:

"(1) on an insured premises with the permission of any Insured;..."

Beginning on page seven is a section entitled "EXCLUSIONS." The policy sets up three major numbered subdivisions, each containing titled paragraphs printed in bold-face capitals. These provisions read, in pertinent part:

"_____EXCLUSIONS_____

"THIS POLICY DOES NOT APPLY:

"1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:

"(a) . . . . . . . . . . . . . .

". . . . . . . . . . . . . .

"(g) To Bodily Injury to Any Insured Within the Meaning of Parts (1) and (2) of Definition of Insured."

After relating conditions of the policy, there follows a series of definitions. This portion of the policy begins: "Applicable to Both Sections I and II

"When used in this policy the following definitions apply:

"(a) 'Insured' means (1) the named insured stated in the Declarations of this policy; and (2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured; and . . . ."

■ Gary contends the policy's exclusionary clause is unenforceable because it is neither conspicuous, plain nor clear. He relies on the rule stated in *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284], that notice of noncoverage of a policy, in a situation in which the public may reasonably expect coverage, must be conspicuous, plain and clear to be enforceable (*id.* at p. 876). Gary focuses on the policy's physical attributes such as its length, size of print and location of provisions in urging the conclusion he seeks. He claims, too, the varying type-face and manner of capitalization of the word "insured" in the policy creates an ambiguity. His contentions are unsupported by applicable authority and without merit.

This case is governed by decisions such as *California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190 [130 Cal. Rptr. 520, 550 P.2d 1056], where the issue was whether similar exclusionary language in an automobile liability policy was sufficiently clear to put the policyholder on notice that it is intended to apply to liability for injuries to any and all insured persons who are injured (*id.* at p. 194). There, a wife was a passenger in the insured car and named insured in the policy. She sued her husband for his negligent operation of the car and the insurance company sought declaratory relief to determine whether it had a duty to provide coverage to the husband. The policy contained a broadly worded liability coverage provision running to the benefit of the "insured," followed by definitions of "named insured," "insured" and "persons insured." The policy's exclusions read, in part: "Exclusions: This policy does not apply under Part I:

". . . . . . . . . . . . . . .

"(k) to liability to [*sic*] bodily injury to any insured."

The court gave effect to the exclusion, holding "the term 'any insured' unmistakably refers to any person insured under the policy, whether such person is a named or unnamed insured..." (*id.* at p. 195). Thus, it held the policy did not cover the husband's liability for injury to the wife. In reaching its conclusion, the court in *Warwick* distinguished its decision in *State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193 [110 Cal.Rptr. 1, 514 P.2d 953], cited by Gary, and holding unclear an exclusionary clause referring to "the insured" without reference to any particular definition. The court in *Jacober* held there was coverage for injuries of the owner of an insured vehicle while he was a passenger in the car because the exclusion provision there could be reasonably interpreted as excluding only injuries sustained by the insured driver. Drawing its distinction, the court in *Warwick* said (17 Cal.3d at p. 195): "*Jacober* is distinguishable because its exclusion clause refers to injuries to '*the* insured' while the present policy refers to injuries sustained by '*any* insured.' The term 'any insured' has a plural connotation, unlike 'the insured.' [Fn. omitted.] Webster defines the word 'any' to mean 'one indifferently out of more than two'; 'one or another'; and 'one, no matter what one.' (Webster's New Internat. Dict. (3d ed. 1961) p. 97.) From the earliest days of statehood we have interpreted 'any' to be broad, general and all embracing. In *Davidson* v. *Dallas* (1857) 8 Cal. 227, 239, this court declared the 'word "any" means every, and the expression "for these purposes or any of them" in effect reads: "for the foregoing purposes and every of them."' [Citations.]"

The identical plural connotation attaches to the "any insured" language of the policy we consider here. By its reference to the definition of "insured," the clause makes it abundantly clear Gary, as a resident of the named insured's household, and the parents, as named insureds, are "insureds" whose injury is excluded from the liability coverage of the policy (see also *State Farm Mut. Auto. Ins. Co.* v. *Hartle* (1976) 59 Cal.App.3d 852 [131 Cal.Rptr. 141], upholding exclusion and based on similar language). The clause fulfills the clear and unmistakable test and thus is an effective exclusion.

It should be noted the policy is nine pages long and, while it contains many provisions, definitions, conditions and exclusions, the printing is generally uniform and the subject matter properly identified with boldface, large-sized print. Gary's attack on the policy's physical characteristics loses substance when one considers the coverage, exclusions and

definitions provisions are all on the same printed surface of just two sheets of paper. Though the pages bear the numbers 6 through 9, a reader of the sheet numbered pages 6 and 7 would see the exclusions provisions prominently set out as the policy's only group of terms which are all in capital letters. The reader can easily find the applicable exclusion here, including a specific reference to the appropriate definition of "insured" for purposes of the exclusion. That definition is available without difficulty. The exclusions provisions are conspicuous and plain in their positioning, labeling and capitalization. The exclusion in question is clear and without ambiguity in its language and reference to the appropriate definition.

■ Gary's contention the number of words in the exclusions provisions, i.e., that it "is buried within a monstrous 396-word sentence which also contains six other exclusions and their respective subdivisions," is not persuasive. Considerations of freedom of contract permit the other exclusions and the format, with its introductory language, subdivided content and paragraphing, is a commonly used method of organizing items connected to a common subject (see, e.g., Ins. Code, § 11580.1, subd. (c)). This method of presentation is more eye-catching than nonparagraphed provisions which are run together. The order of listing the items can be attributed to no more than happenstance, and thus we cannot accept Gary's descriptions of the provisions as "buried," "monstrous" or "a sea of print" for purposes of determining the presence or absence of ambiguity and whether the exclusion is conspicuous, plain and clear. Nor can it credibly be said, as Gary asserts, the varying manner of capitalization of the word "insured" creates any ambiguity or vagueness in the meaning of the term or gives rise to any difficulty in reading the policy so as to find and apply the policy's definition.

The cases Gary cites to us are distinguishable from his case either because there was both ambiguity in the language of the exclusion and a lack of conspicuous presentation,[2] or the policy was organized and pre-

---

[2]*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 752 [161 Cal.Rptr. 322]—where question was whether rental "property" exclusion encompassed real property in context of preceding phrase about "transported" property; *National Indemnity Co.* v. *Demanes* (1978) 86 Cal.App.3d 155, 160-163 [150 Cal.Rptr. 117]—where there was small print medical certificate requirement, no definition of named insured and exclusionary language in a low visibility, separate endorsement clause to the policy, six pages from introductory clause "this policy does not apply"; *Migliore* v. *Sheet Metal Workers' Welfare Plan* (1971) 18 Cal.App.3d 201, 204-206 [95 Cal.Rptr. 669]—where complete, "free-choice" coverage statement for hospital expenses incurred was followed

sented in a manner that could only be described as misleading to the ordinary insured person.[3]

In light of these distinctions and the close parallel of Gary's case to the facts of *California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick, supra,* 17 Cal.3d 190, we hold the exclusionary clause in the homeowners' policy here under consideration is effective so as to preclude the sought after liability coverage for the injuries to Gary and his parents.

We can find no authority either in court decision or legislative enactment to suggest this exclusion in a homeowner's policy is against public policy and, indeed, we do not believe it is.

Gary contends the trial court erred in refusing to admit the testimony of Dr. Rudolph Flesch who, on his offer of proof proposed to show by application of the Flesch readability test and otherwise the policy here in question was ambiguous and the exclusion is neither conspicuous, plain nor clear. In ruling on the offer, the court said it had considered a 14-page affidavit of Dr. Flesch as a supplement to counsel's argument in the case. In the affidavit, Dr. Flesch applies his test and concludes the exclusion is "unintelligible to even the most sophisticated and highly educated policyholders."

As Gary notes, other states which have adopted the Flesch readability test for application to insurance policies have done so by statute. We agree with the inference arising from this fact that any adoption of such a test in California should be left to the Legislature. Moreover, we find in the record a careful exercise by the trial court of its discretion in the matter of the admissibility of the evidence. It is clear there was no abuse of that discretion and, even if some error could be attached to the court's ruling on admissibility, it would not be prejudicial since the

---

by exclusionary clauses on pages 4 and 31, eliminating government hospitalization with no mention whether elimination depended on free or for charge government hospitalization; *Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735, 738 [74 Cal.Rptr. 367]—where court was concerned with ambiguity of a disability time limit provision in the language granting coverage.

[3]*Gerhardt* v. *Continental Ins. Co.* (1966) 48 N.J. 291 [225 A.2d 328, 332-334]— where policy contained repeated, apparently "comprehensive" provisions of coverage mentioning and pertaining to residence employees followed by inconspicuous fine print clause excluding such coverage with obscure modifier.

court fully considered the substance of Flesch's proposed testimony. The trial court's ruling is upheld.

Judgment affirmed.

Work, J., and Butler, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 25, 1981.

*Assigned by the Chairperson of the Judicial Council.