Hector CINTRON, Plaintiff,

v.

UNIVERSAL UNDERWRITERS GROUP, a foreign corporation, Defendant.

Superior Court of Delaware, New Castle County.

Submitted: April 10, 1990.
Decided: July 26, 1990.

---

Edward T. Ciconte, Wilmington, for plaintiff.

Beth H. Christman, of Casarino, Christman & Shalk, Wilmington, for defendant.

## OPINION

GEBELEIN, Judge.

The plaintiff in this action, Hector Cintron, was operating his motorcycle when he was injured in a motor vehicle accident. At the time of the accident he had motor vehicle insurance with the defendant. The personal injury protection (PIP) coverage purchased was for the minimum limits permitted by Delaware law: $15,000/$30,000.[1] The policy, however, was subject to a $15,000 deductible.

 The insurance application stated that the "$15,000 deductible will apply be-

fore there is any payment due from the company...." The plaintiff's medical bills and lost wages exceeded $15,000 and he sought no-fault PIP benefits from his insurer for those losses greater than $15,000, to the extent of the policy limits of $15,000 per person. The insurer denied the claim for benefits. The plaintiff now seeks summary judgment alleging that as a matter of law the defendant should pay him no-fault benefits for the expenses in excess of his deductible up to a maximum of $15,000, because the statute requires minimum coverage of $15,000.

Alternatively, he argues that the insurance policy is ambiguous regarding how deductibles affect the company's liability and that the insurer's interpretation of the manner in which the deductibles are to be applied are against the plaintiff's reasonable expectations as created by the application.

The defendant also seeks summary judgment, alleging that as a matter of law the Code provides $15,000 for any one person injured; that the owner may elect coverage subject to deductibles;[2] and that the plaintiff, the only person injured, elected $15,000 in deductibles. It reads the provision as meaning that because there was only one person injured, and that person is entitled only to $15,000, which was also the amount of the deductible, that the plaintiff is not entitled to any payment.

The plaintiff argues that if the Court reads the law as the defendant suggests, then the plaintiff has paid a premium and in return received no coverage. He argues that would be contrary to the statutory language which requires minimum coverage and contrary to the statute's public policy objective of enabling injured parties to receive from their own carrier the eco-

---

1. 21 *Del.C.* § 2118 provides that no owner of a motor vehicle shall operate the vehicle unless the owner has insurance on the vehicle for indemnity for bodily injury with "a minimum limit for the total of all payments ... of $15,000 for any 1 person and $30,000 for all persons injured in any 1 accident."

2. 21 *Del.C.* § 2118(a)(2)(f) provides that, "The owner of a vehicle may elect to have the cover-

age described in this paragraph written subject to certain deductibles: and that "the owner of a motorcycle may elect to exclude from such coverage expenses incurred as a result of injury to any person riding such vehicle while not on a highway and in any case of injury when no other vehicle was involved by actual collision or contact. This election must be made in writing and signed by the owner of the vehicle...."

nomic benefit of immediate payment without awaiting protracted litigation.

The defendant responds coverage would be available to a passenger injured while riding with him under identical circumstances and, therefore, he has not paid a premium without receiving coverage. It further argues that the plaintiff accepted the risk.

The Delaware Supreme Court has addressed the issue of whether deductible clauses which reduce coverage below the minimum required by the statute are illegal and void as against public policy. *Barber v. Williams*, Del.Supr., 445 A.2d 334 (1981) (Unpublished Order No. 120, 1981, Oct. 27, 1981).

In *Barber*, the medical expenses and lost wages of the two plaintiffs were less than $10,000 and the no-fault insurer denied benefits. The Court determined that although the statute provided that the minimum required insurance was $10,000 for one person per accident and $20,000 for two or more persons per accident, the statute also permitted coverage to be subject to a deductible. The Court held that while the deductible, in effect, eliminated the PIP coverage required by statute, the deductible provision was not against public policy, but rather reflected the public policy of allowing those insured to use other methods of insuring for the amount of the deductible or to minimize the cost of insurance.

Since *Barber*, the only legislative change to the provision was to the dollar amount, raising it from $10,000/$20,000 to $15,000/$30,000. Presumably, the legislature was aware of the 1981 *Barber* decision when it amended the statute in 1983, yet it made no changes to preclude the use of deductibles that effectively eliminated the minimum coverage required.

Here, the plaintiff argues that *Barber* is distinguishable because the damages to the plaintiffs in *Barber* did not exceed their deductible amount, whereas, his damages exceed his deductible amount. He relies on the Superior Court decision that states that the plaintiffs' "total out-of-pocket expenses did not exceed the deductible" and there-

fore they were not entitled to reimbursement in light of the deductible on the policy. He further interprets that as meaning that if the expenses exceed the deductible, then the insured would have been entitled to reimbursement.

In its decision, the Supreme Court stated that the plaintiffs contended that the statute which contains language relating to the use of deductibles cannot validly be applied to eliminate the personal injury protection required by statute. The Court stated that "we do not agree." Thus, the Court in *Barber* looked at the effect of the deductible provision which effectively eliminated PIP coverage, under the facts of that case. The Court notes that the public policy argument made in *Barber* is the same argument made by this plaintiff. Therefore, this Court cannot conclude that the statute, as a matter of law, prohibits deductibles that would eliminate the minimum coverage required.

█ However, the plaintiff also argues that he was not advised of the implications of taking this deductible and that the language of the contract was ambiguous regarding the use of deductibles.

The language the plaintiff relies on is included on the application which states:

THE POLICY WILL CONTAIN THE FOLLOWING RESTRICTED PERSONAL INJURY PROTECTION KNOWN AS OPTION 5:

Personal Injury Protection (PIP) benefits as set forth in the Delaware Motorists Protection Act, with coverage restricted as follows: only accidents occurring on a highway, and wherein there is actual physical contact with another vehicle; a $15,000 deductible will apply *before* there is any payment due from the company: there is a 45 day waiting period for loss of earnings and such coveage thereafter is only to the extent of 50% of the maximum provided by the Act. (Emphasis added.)

The plaintiff alleges that he understood the provisions to mean that his PIP benefits would not be paid until his losses exceeded the $15,000 deductible. He believes

that this interpretation is a reasonable expectation because otherwise he would have paid a premium for no coverage.[3] He also points out that the policy throughout refers to a minimum of $15,000 and refers to the policyholder as the "insured."

The insurer submits the plaintiff's execution of the "Delaware Motorist's Protection Act Required Statement to Policyholders" as evidence that the plaintiff selected a $15,000 deductible. However, the form gives no explanation of how the deductible will be applied, which is the actual issue in dispute in this case.

The insurer also submits the "Delaware Personal Injury Protection Benefits (PIP)" form which summarizes descriptions of the options available and shows that the plaintiff selected Option 5.

That form states that Option 5 has a premium of $10 which is included in all rate quotations and summarizes it as:

> Included Premium. PIP Benefits containing the restrictions in Option No. 2 (coverage restricted to highway accidents), Option No. 3 (coverage restricted to actual physical contact with another vehicle) and Option No. 4 above (coverage limited to a deductible of $1,000 before any payment is due from the Company), except that the deductible amount is $15,000 instead of $1,000. (Emphasis and parenthetical explanations of the options added).

The form states essentially the same language as that of the application, on which the plaintiff relies: that the deductible applies *before* any payment is made.

The statute requires that the election be in writing. 21 *Del.C.* § 2118. That requirement has been more specifically treated in a regulation promulgated by the Insurance Commissioner that deals with how deductibles will be treated on the application. Regulation # 9 (Amended), para. 6(c), State of Delaware—Insurance Department (May 16, 1987). It provides that the standards for the requirement of an election of a deductible in writing may be satisfied by a statement on the application, or other

form "which shall clearly convey the effect of his/her option selected."

The Commissioner's authority to issue these regulations is found in 18 *Del.C.* § 314, which allows the Commissioner to "make reasonable rules and regulations necessary for or as an aid to the administration or effectuation of any provision of this title."

Not only does this Court find the rule requiring that the effect of the option be clearly conveyed to be reasonable, but it considers the requirement necessary because of the impact on the "insured", who may in effect be left without coverage.

The concerns of this Court if such provisions do not clearly convey the effect of the option of deductibles have been expressed by the Florida Supreme Court. *Industrial Firm & Cas. Ins. Co. v. Kwechin*, 447 So.2d 1337, 1339 (1983). The Court stated that to allow one who lacks other insurance coverage to purchase PIP subject to a deductible of several thousand dollars, makes that person, in effect, a self-insurer without subjecting them to any showing of financial responsibility as required by law. Allowing the insurance company to issue the policy with large deductibles circumvents the policy of assuring that persons injured receive some economic aid in meeting medical expenses in order not to drive them into dire financial circumstances with the possibility of swelling the public relief rolls. *Id.*

In Florida, the statute required insurers to inform prospective buyers of the impact of deductibles and does not allow the large deductibles unless the buyer demonstrated they had other insurance. While Delaware's statute only requires that the selection be in writing, this Court cannot conclude that a writing that does not clearly convey the effect will suffice. This is especially true in light of the Commissioner's regulation expressing this public policy. This Court concludes that the application does not clearly convey the effect of electing the option because the language states

---

**3.** The return endorsement stated that the "option shown above refers to personal injury pro-

tection" and shows the premium amount to be $9.00.

that the coverage is limited to the deductible *before* any payment is made.

The plaintiff interprets this language as meaning that payment is delayed until the expenses are greater than the deductible. This meaning is consistent with the plain and ordinary meaning of deductible, which is "a clause in an insurance policy stating that the insurer will pay that portion of a loss, damage, etc. remaining after a stipulated amount, to be paid by the insured party, is deducted." *Webster's New World Dictionary,* 368 (2d College Ed.1984).

Under the defendant's interpretation, the defendant would never have to pay the coverage amount for injury to one person that policyholders believed they had purchased because the deductible cancels that coverage. The very words used by the insurance company in its application and protection form, "before any payment is due" would become meaningless (if not deliberately misleading). It is difficult to believe that a rational and informed consumer would pay premiums for such self-defeating insurance coverage.

In reading an insurance policy, should the policy be ambiguous, it must be construed against the insurer when the policy is against the expectations of the insured. *See, Hallowell v. State Farm Mutual Auto Ins. Co.,* Del.Supr., 443 A.2d 925, 926 (1982); and, *Novellino v. Life Insurance Co. of North America,* Del.Supr., 216 A.2d 420, 422 (1966).

However, the insurer argues that the term "deductible" as defined in the policy is not ambiguous and that the limit of compensation provided in that definition makes it clear that the plaintiff is not entitled to recover anything under the policy. It argues that the specific policy provisions should control.

The policy provides that:

Regardless of the number of persons insured, policies applicable, claims made or INSURED MOTOR VEHICLES to which this insurance applies the total limit of compensation payable by the Company under this insurance for all loss and expense arising out of BODILY INJURY sustained by one INJURED PERSON as the result of any one accident shall be $15,000 and, subject to the above provision respecting one INJURED PERSON, the total limit of compensation payable by the Company for all loss and expense arising out of BODILY INJURY sustained by two or more INJURED PERSONS as the result of any one accident shall be $30,000; provided that, the payment of funeral expenses included in the foregoing shall in no event exceed $2,000 for any one person.

The total amount of any applicable deductible shall be deducted from the total amount of all sums which the Company is obligated to pay for all loss and expenses arising out of BODILY INJURY sustained by one or more INJURED PERSONS to whom such deductible applies as the result of any one accident and, subject to the foregoing, the total limit of compensation payable by the Company with respect to loss and expense of such INJURED PERSON or persons shall be the difference between such deductible amount and the limit of compensation specified in the policy.

The plaintiff argues that the selection of language causes confusion and, therefore, it is ambiguous. *Lamberton v. Travelers Indemnity Co.,* Del.Super., 325 A.2d 104 (1974) (an ambiguity exists where the language used has two or more reasonable interpretations, or where the deliberate selection of language causes confusion).

Here, the original application stated that before the company would pay, the deductible would be applied. The plaintiff's understanding of the application language was the common and ordinary meaning. There is no allegation that plaintiff was ever advised that the deductible meant that there would be no coverage if only one person were injured.

That effect also was not clearly conveyed on the application for insurance as required by regulation. The Court notes that the language relied on by the defendant differs from the ordinary meaning of the term "deductible" and that the provision now relied upon was one of many provisions, definitions, conditions, and exclusions included in a document that was approximately 17 pages long.

Furthermore, in considering whether the policy language creates confusion, the Court notes that the provision consists of two paragraphs, each of one sentence. The first paragraph/sentence is 123 words; the second paragraph/sentence is 95 words. The Insurance Commissioner in developing the regulation for Basic Readability Requirements for Automobile Insurance Policies provided that to be readable, the policy should be written in everyday language to the extent possible. Those regulations indicate that short familiar words should be used; and that sentences are more readable if they are short and simple. Regulation 24, para. 3(d)(a), (b) and (c), State of Delaware—Insurance Department (Oct. 14, 1976). The commentary on making sentences readable states that:

> Most experts in modern writing agree that good sentences should average less than 20 words. It is preferable to express a complete thought in each short sentence and then to convey complex ideas by use of several short sentences.

Here, the sentences are long, complicated and not written in everyday language. Also, to fully understand the provision the reader must read and understand the definitions of each word that is printed in capital letters.[4]

Because the policy was drafted by the insurer, because it is basically a contract of adhesion, and because automobile insurance is mandatory in Delaware, the Court construes the policy most strongly against the insurer. The Court further concludes that because the terms as used differ from the term as ordinarily understood and is so convoluted as to cause confusion to the reader, the policy definition is ambiguous. Where the policy is ambiguous, it must be construed against the insurer. The plaintiff could have reasonably relied on the language on the application and upon the Delaware Motorist's Protection Form. Therefore, the reasonable expectations of the purchaser must prevail. Those expectations are that no payment is due until plaintiff's damages exceed $15,000 and then that coverage exists to the policy limit of $15,000.

The plaintiff's motion for summary judgment is GRANTED and the defendant's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.

---

**4.** While not basing its decision on this information, the Court notes that the current insurance regulations require that readability formulas be used to check the policy text. It further provides: "All such automobile insurance policy forms shall have a total 'readability score' of 40 or more on the Flesch Scale." The score may be less where the length of sentences and words are sufficiently compensated for by compliance with other standards. Reg. No. 24(D)(2) and Commentary. The legislature designated the Flesch Formula for Readability as the test of readability and generally adopts a minimum score of readability of not less than 40. It requires that insurance policies be readable and understandable by a person of average intelligence and education. 18 *Del.C.* § 2741. The Flesch Scale is between 0 (practically unreadable) and 100 (easy for any literate person). *See,* R. Flesch, *How to Write, Speak and Think More Effectively,* (1960); R. Flesch, *How to Write Plain English: A Book for Lawyers & Consumers,* (1979). *See, also, State Farm Fire & Cas. Co. v. Alstadt,* Cal. 4th Dist., 113 Cal.App.3d 33, 169 Cal.Rptr. 593 (1980); *Deras v. Roberts,* Ore. Supr., 785 P.2d 1045 (1990); *Deras v. Roberts,* Ore.Supr., 788 P.2d 987 (1990) (discussing application of the Flesch Formula). Application of the Flesch Formula to the two paragraphs at issue here results in a Reading Ease Score of 0. That means the language is written in a practically unreadable manner or one that might be understood by a Ph.D.