Eric **AARVIG, and all others similarly situated, Plaintiff,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant.**

**No. 02–4081 ADM/AJB.**

United States District Court, D. Minnesota.

Oct. 8, 2003.

Mark S. Wasserman, Allan Shapiro & Associates, Minneapolis, MN, for and on behalf of Plaintiff.

Charles E. Spevacek, and Sarah E. Greenberg, Meagher & Geer P.L.L.P., Minneapolis, MN, for and on behalf of Defendant.

## MEMORANDUM OPINION AND ORDER

MONTGOMERY, District Judge.

### I. INTRODUCTION

This matter came before the undersigned United States District Judge on August 28, 2003, for oral argument on the cross Motions for Summary Judgment of Plaintiff Eric Aarvig ("Plaintiff" or "Aarvig"), and all others similarly situated [Docket No. 19] and of Defendant Liberty Mutual Fire Insurance Company ("Defendant" or "Liberty Mutual") [Docket No. 11]. At issue is the interpretation and application of the language of the insurance policy Aarvig held with Liberty Mutual. Because the material facts of the matter are not in dispute, the parties agree the case may be fully resolved on summary judgment. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

### II. BACKGROUND

Aarvig sustained serious injuries in January 2001 as a result of an automobile accident. At the time of the accident, Aarvig was insured under a Liberty Mutual policy that included no-fault benefits for medical expenses and wage losses. The coverage provided a maximum of $20,000 for medical costs and $20,000 for lost earnings, subject to $100 and $200 deductibles, respectively. Zierke Aff. Ex. B1 at 1 (Auto Policy Schedule). The policy states in relevant part:

LIMIT OF LIABILITY

A. The [$20,000] limits of liability shown in the Schedule or Declarations for Personal Injury Protection Coverage are the most we will pay to or for any one "insured" injured in any one "motor vehicle" accident.

. . . . .

C. Any amounts otherwise payable under this endorsement shall be reduced by:

. . . . .

2. Any applicable medical expenses deductible shown in the Schedule or Declarations.

. . . . .

3. Any applicable work loss deductible shown in the Schedule or Declarations.

Zierke Aff. Ex. B1 at 5 (Endorsement to Auto Policy). Applying this policy, Defendant paid Aarvig $19,900 for medical expense benefits and $19,800 for lost wage benefits. Plaintiff makes three arguments to support his claim that the inclusion and use of deductibles by Liberty Mutual violates Minnesota law. Defendant counters that it properly adjudicated and paid Aarvig's claims and is in full compliance with Minnesota's insurance laws.

### III. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that the court shall

render summary judgment if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Plaintiff first argues Defendant's payments to Aarvig were erroneous and unlawful because state law prohibits the offer of deductibles.

Minnesota Statute Chapter 65B, the "No–Fault Act," requires a driver to purchase basic economic loss insurance, with a minimum of $20,000 of coverage each for medical and non-medical (including income loss) benefits. It provides as follows:

> Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle, subject to any applicable deductibles, exclusions, disqualifications, and other conditions, and shall provide a minimum of $40,000 for loss arising out of the injury of any one person. . . .

Minn.Stat. § 65B.44 subd.1(a). Plaintiff contends that despite the language "subject to any applicable deductibles," the Legislature intended to prohibit the use of deductibles when it repealed the mandatory offer of deductibles, previously a part of the No–Fault Act, in 1980. When the statute was first enacted, it contained a provision requiring insurance carriers to offer deductibles, stating, "[a]t appropriately reduced premium rates reparation obligors shall offer the following deductibles" to the insured. Minn.Stat. § 65B.49 subd.5, repealed 1980. Though this "mandatory offer" subdivision was repealed in 1980, the reference to deductibles in Section 65B.44 has remained unchanged through multiple amendments. Plaintiff presents no proof to support his theory that retention of the term was a legislative oversight rather than an intentional action. Repeal of the requirement that insurers offer deductibles does not equate to a prohibition of making the payment of a deductible an option for the policy holder.[1] *See generally Hoeschen v. South Carolina Ins. Co.*, 349 N.W.2d 833, 838 (Minn.App. 1984) (stating that Legislature's repeal of the mandatory offer of underinsured motorist coverage did not prohibit such coverage, but simply made it "optional rather than mandatory"). Plaintiff has not established that deductibles are impermissible under Minnesota law and the State Legislature's continued inclusion over 23 years of the qualification that reimbursement of basic economic loss is "subject to any applicable deductibles" belies such a conclusion. Minn.Stat. § 65B.44 subd.1(a).[2]

■ Plaintiff next asserts the policy violates the No–Fault Act's prohibition of the

---

**1.** The choice of whether to select a deductible is thus left for individual consideration, depending on the preferences and circumstances of the insured. The choice to include a deductible generally will result in a lower premium. While this is the goal of many consumers, others may prefer to pay a higher premium to maximize recovery in the event of an accident.

**2.** Plaintiff's parade of horribles argument regarding enormous hypothetical deductibles is not convincing. They contend that without explicit statutory authorization, deductibles must be prohibited so as to avoid parties from contracting for $20,000 in coverage, subject to a $20,000 deductible. In Minnesota, the state legislature has delegated to the Department of Commerce the regulation and oversight of the insurance industry, which includes review of policies to ensure compliance with the law and reasonable deductibles. *See* Baker Aff. ¶ 2.

coordination of benefits. "To preserve the no-fault insurer's status as the primary source of benefits for those injured in automobile accidents, the Act generally prohibits no-fault insurers from coordinating basic economic loss benefits with benefits *provided by any other legal entity.*" *Stout v. AMCO Ins. Co.*, 645 N.W.2d 108, 112 (Minn.2002) (emphasis added); *see* Minn. Stat. § 65B.61 subd.1. Plaintiff's argument is misplaced. The primacy of economic loss benefits is not contested here. Rather, Plaintiff seeks to invoke a principle that applies only when "an injured person is entitled to compensation for the same loss" from multiple sources. *Id.* Only one policy is at issue in this case and the inclusion of a deductible, payable by the insured, does not amount to an unlawful coordination of benefits with a third party.

■ Lastly, Plaintiff challenges Defendant's provision and application of Aarvig's deductibles on the ground that Liberty Mutual impermissibly lowered Aarvig's benefits below the statutory minimum. Plaintiff claims that because neither the No-Fault Act nor the policy defines "deductible," the Court must adopt their interpretation of the term.

While Aarvig's policy does not include a per se definition of "deductible," it does expressly state that any amount payable under the endorsement *"shall be reduced by* [ ][a]ny applicable medical expenses deductible shown in the Schedule" and "[a]ny applicable work loss deductible shown in the Schedule." Zierke Aff. Ex. B1 at 5 (emphasis added). Thus, the policy language makes clear that the deductibles will reduce the total benefit amount payable pursuant to the "Limit of Liability" in the Schedule, here, a maximum of $20,000 for medical expenses and $20,000 for work loss. *See id.* at 1. The terms of the insurance contract are ordinary and unambiguous. The question is thus whether or not pairing these limits of liability with a $100 and $200 deductible, respectively, violates the minimum coverage provision of the No-Fault Act.

Section 65B.44 mandates that an insurance policy provide benefits for basic economic loss of at least "$20,000 for medical expense loss" and "a total of $20,000 for income loss." *Id.* subd.1. "An insurer may not provide less coverage than that required by the Act." *American Nat'l Prop. & Cas. Co. v. Loren*, 597 N.W.2d 291, 292 (Minn.1999).

The parties agree this is an issue of first impression in this state and reference no Minnesota case law interpreting this provision in a factual pattern where the benefits paid to the insured fell below the minimum amounts set forth in the No-Fault Act due to the application of a deductible. As cited above, the pertinent subdivision, in addition to prescribing minimum coverage amounts, states that economic loss benefits are "subject to any applicable deductibles," thereby affirming an insured's ability to elect lower premiums in exchange for reduced benefits. Minn.Stat. § 65B.44 subd.1. However, the provision is written in the conjunctive, stating such benefits "shall provide reimbursement for all loss suffered ... subject to any applicable deductibles, exclusions, disqualifications, and other conditions, *and shall provide* a minimum of $40,000." *Id.* (emphasis added). Accordingly, the statute could reasonably be read as permitting deductibles, but not where application of the deductible amount would reduce the payment of benefits below the statutory minimums. Alternatively, as Defendant contends, the $40,000 figure may refer only to the required minimum amount of a policy's coverage, even if a deductible may reduce the total actually paid to the insured to a lesser amount.[3]

3. Plaintiff disputes that a deductible, regardless of statutory requirements, can reduce the

Defendant relies on precedent from other states which analyzed insurance statutes modeled on the Uniform Motor Vehicles Reparations Act and found that deductibles may lower benefits below the specified statutory minimum. Because Minnesota's No–Fault Act was also based on this uniform scheme, Defendant argues it should be interpreted in a similar fashion to the insurance statutes of the sister states. *See* Minn.Stat. § 645.22 (stating that Minnesota "[l]aws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them"). Plaintiff counters that variations in these states' statutes render their case law inapplicable.

While the cases cited by Liberty Mutual allow deductibles to reduce benefit payments below the relevant statutory minimums of coverage, the language of the statutes involved in each case is more specific than that of the Minnesota No–Fault Act. For example, the statute construed by the Florida Supreme Court mandated the offer of deductibles and provided that the deductible amounts should "be deducted from the benefits otherwise due." *International Bankers Ins. Co. v. Arnone*, 552 So.2d 908, 909 (Fla.1989) (citing Fla. Stat. § 627.739(2)). As the court noted, the statute thus explicitly defined the proper application of deductibles. *Id.* at 911. Likewise, in *Carreker v. Southern General Insurance Co.*, 204 Ga.App. 478, 419 S.E.2d 724 (1992), the Georgia Court of Appeals found that the plain text of Geor-

gia's insurance statute defeated the plaintiff's assertion that the deductible was merely a threshold to recovery because the law specifically permitted sale and use of deductibles and instructed that they be applied "as a reduction in the limits of coverage." *Id.* at 480.

Most analogous to the Minnesota Act, the Delaware motor vehicle insurance statute requires coverage of at least $15,000 and permits an insured to "elect to have the coverage described in this paragraph written subject to certain deductibles." 21 Del. C. § 2118(a)(2)(a)(5)(b) & (f). Although there is no legislative direction regarding how deductibles should be applied, Delaware courts have held that the insurance carrier may apply a deductible to reduce payment of benefits below the statutory minimum required. *Cintron v. Universal Underwriters Group*, 601 A.2d 1051, 1053 (Del.Super.1990) (relying on prior unpublished Delaware Supreme Court decision of *Barber v. Williams* ).

Like the Delaware law and in contrast to the Florida and Georgia statutes referenced above, the Minnesota No–Fault Act supplies no guidance on application of deductibles. It does, however, explicitly provide that medical expense and lost wage benefits are subject to deductibles, indicating that a deductible may be made available in exchange for a reduced premium. *See* Minn.Stat. § 65B.44 subd.1(a). Aarvig's policy provided the $40,000 in coverage mandated by the No–Fault Act and clearly states that the deductible operates

---

payment amount below the policy limits. Rather, they assert, a "deductible" defines a threshold to recovery, such that a policy with a $100 deductible and a $50,000 coverage limit would not provide any benefits for a $90 loss, but would provide the full $50,000 for a $100,000 loss. While Plaintiff highlights variances in the meaning assigned to "deductible" and the related phrase "self-insured retention," their construction of the word is not

inherently more reasonable than Defendant's: that a deductible applies as a reduction in the amount of benefits payable. More importantly for purposes of the instant interpretation dispute, Aarvig's policy explained in plain terms how the deductible would operate with respect to the policy's limits of liability and Liberty Mutual administered the benefits accordingly. *See* Zierke Aff. Ex. B1 at 5.

to reduce the policy limits. Zierke Aff. Ex. B1 at 1, 5. That the benefits actually paid fell below $40,000 does not render the policy contrary to Minnesota law. *Cf. Cintron*, 601 A.2d at 1053. The Act permits deductibles and regulation by the Department of Commerce ensures that insurance sold in Minnesota conforms to the requirements of the law. Accordingly, following the decisions of other states that have enacted versions of the uniform no-fault scheme similar to Minnesota's statute, Liberty Mutual's offer and application of $100 and $200 deductibles as part of Aarvig's motor vehicle insurance was permissible. The continued inclusion in the No-Fault Act of the clause that benefits are "subject to any applicable deductibles," also suggests such deductibles are not merely a threshold to recovery, but are subtracted from loss benefits otherwise payable. Thus, the insured·is liable for payment of the amount of the deductible and the insurer is liable for the remaining covered losses, up to the limit of the policy. By subtracting the deductible amounts for which Aarvig was contractually responsible and paying the balance of the claims, $39,700, Liberty Mutual properly applied the policy within the confines of Minnesota law. Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Docket No. 11] is **GRANTED**,

2. Plaintiff's Motion for Summary Judgment [Docket No. 19] is **DENIED**, and

3. Plaintiff's Complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**