# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3591

_____

Andrea L. Dammann; May K. Yang, individually and on behalf of classes of similarly situated indivduals

*Plaintiffs - Appellants*

v.

Progressive Direct Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 8, 2017
Filed: May 11, 2017

_____

Before BENTON, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Plaintiffs Andrea Dammann and May Yang filed a class action in Minnesota state court alleging that Progressive Direct Insurance Company (Progressive) sold insurance policies with benefits below the statutory minimum required by Minnesota law. After Progressive removed the case to federal court, plaintiffs moved to remand. Plaintiffs argue that the requirements for removal under the Class Action Fairness Act

(CAFA) were not met. The district court[1] denied plaintiffs' motion to remand and subsequently granted Progressive's motion to dismiss for failure to state a claim. Plaintiffs appeal, and we affirm.

I.

Andrea Dammann and May Yang are both Minnesota residents who purchased automobile insurance policies from Progressive. Payments of certain deductibles were required by the policies in the event of covered losses: $100 for medical expense payments and $200 for economic loss payments. Both policies provided only the minimum coverage required by Minnesota law: $20,000 for medical expenses, and $20,000 for economic losses.

Dammann and Yang both suffered covered losses and incurred more than $20,100 in medical expenses as a result. Because their policies included the $100 deductible for medical expense payments and a maximum coverage of $20,000, each plaintiff received a payment of just $19,900 from Progressive. Both filed suit in Minnesota state court alleging that Progressive's practice of selling policies with deductibles which reduced benefit payments below $20,000 for medical expenses and for economic losses violated Minnesota law. Plaintiffs sought to represent a class of all similarly situated individuals.

Progressive timely removed the case to federal court. Plaintiffs then moved to remand to state court on the ground that CAFA's jurisdictional requirements were not met because the amount in controversy did not exceed $5,000,000. After the district court denied the motion to remand, Progressive moved to dismiss the case under

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota, adopting the reports and recommendations of the Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion to dismiss, and plaintiffs appeal.

## II.

Plaintiffs first argue that the district court should have remanded the case to state court because it lacked jurisdiction. We review de novo a district court decision that subject matter jurisdiction exists under CAFA. See Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009). If the district court's jurisdictional decision rests on findings of fact, we review those factual determinations for clear error. See Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC, 620 F.3d 926, 930 (8th Cir. 2010).

Under CAFA, federal courts have original jurisdiction over class actions "where, among other things, 1) there is minimal diversity; 2) the proposed class contains at least 100 members; and 3) the amount in controversy is at least $5 million in the aggregate." Raskas v. Johnson & Johnson, 719 F.3d 884, 886 (8th Cir. 2013). The party seeking removal under CAFA bears the burden of establishing these jurisdictional requirements by a preponderance of the evidence. See id. at 887.

The plaintiffs argue that the district court erred when it determined that the amount in controversy here exceeds $5,000,000. Specifically, the plaintiffs argue that because "the plaintiff is the master of the complaint," Bell, 557 F.3d at 956, the district court should have restricted its analysis of the amount in controversy to what could be recovered by the class of individuals identified in the complaint—individuals who had actually made claims for covered losses and were paid less than the statutory minimum. According to Progressive, some six hundred individuals fall within this class. When the district court calculated the amount in controversy, however, it relied on premiums collected on all Progressive policies

which included the challenged deductibles, regardless of whether the policyholders had made claims which led to application of the deductibles.

As the district court noted, the facts here are similar to those in Raskas, 719 F.3d at 886. There, a group of plaintiffs filed a lawsuit in Missouri state court alleging that various manufacturers of medications had "conspired . . . to deceive customers into throwing away medications after their expiration dates, knowing that the medications were safe and effective beyond the expiration date." Id. The defendants sought to remove to federal court based on their sales revenue in Missouri during the class period. Id. Plaintiffs sought to remand on the ground that "these sales figures were insufficient to satisfy the amount in controversy requirement, as Plaintiffs are only seeking to recover damages for medications discarded and replaced." Id. They argued that defendants' evidence in support of the amount in controversy was overinclusive because it encompassed more than just the sales attributable to the challenged practice. Id. at 887. We rejected the plaintiffs' overinclusiveness argument, however, for "when determining the amount in controversy, the question 'is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are.'" Id. (quoting Bell, 557 F.3d at 959).

As in Raskas, the plaintiffs argue here that the evidence provided by Progressive to satisfy CAFA's amount in controversy requirement is overinclusive because it includes all premiums collected on policies with the challenged deductibles, not just the premiums collected from members of the narrowly defined class. The district court correctly concluded that this case is like Raskas and Progressive carried its burden of establishing by a preponderance of the evidence that the amount in controversy exceeded CAFA's jurisdictional minimum.

After the party seeking to remove has shown CAFA's jurisdictional minimum by a preponderance of the evidence, "remand is only appropriate if the plaintiff can

establish to a legal certainty that the claim is for less than the requisite amount." Bell, 557 F.3d at 956. As we have pointed out, "[e]ven if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." Raskas, 719 F.3d at 888. We conclude that the plaintiffs here have failed to show that it is legally impossible for them to recover more than $5,000,000. While they put Progressive's sales practices at issue and seek a refund of their premium payments, they have not offered evidence to establish the amount they collectively paid in premiums. Without such information, we cannot determine whether it would be legally impossible for them to recover $5,000,000. We therefore conclude that the district court properly denied the motion for remand.

## III.

The plaintiffs also argue that the district court erred when it granted Progressive's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We review a district court order granting a motion to dismiss de novo and "accept[] as true all facts alleged in the complaint." Trooien v. Mansour, 608 F.3d 1020, 1026 (8th Cir. 2010). A defendant's "motion to dismiss should be granted if 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'" Id. (quoting Knapp v. Hanson, 183 F.3d 786, 788 (8th Cir. 1999)).

The district court granted Progressive's motion to dismiss on the ground that the deductible practice challenged by the plaintiffs did not violate Minnesota's No Fault Act. Since the parties agree that there are no disputes about the facts in this case, the only remaining question is whether the district court properly interpreted the Minnesota No Fault Act.

The Minnesota No Fault Act provides as follows:

(a) Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle, subject to any applicable deductibles, exclusions, disqualifications, and other conditions, and shall provide a minimum of $40,000 for loss arising out of the injury of any one person, consisting of:

(1) $20,000 for medical expense loss arising out of injury to any one person; and

(2) a total of $20,000 for income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss arising out of the injury to any one person.

Minn. Stat. § 65B.44, subd. 1.

The parties disagree about whether the statute permits policies that provide less than $40,000 after application of any deductibles. Because the Minnesota Supreme Court has not previously answered this question, "we must attempt to predict how [it] would resolve the issue." Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010). Under Minnesota law, "[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16. Minnesota courts "determine legislative intent primarily from the language of the statute itself." Brayton v. Pawlenty, 781 N.W.2d 357, 363 (Minn. 2010) (internal quotation marks omitted).

Plaintiffs and Progressive each argue that the statute's plain text unambiguously supports their side's position. The text is not so clear, however. It could be understood to mean that the basic economic loss benefits of at least $40,000 are subject to deductibles which could reduce coverage below that basic amount. As

plaintiffs argue, however, it could also be read to set out two independent requirements, meaning that the "subject to . . . deductibles" clause would not modify the minimum coverage amounts. Since the text is ambiguous, we look at other indications of the legislature's intent. See Marks v. Comm'r of Revenue, 875 N.W.2d 321, 324 (Minn. 2016).

Although this case presents a matter of first impression in our court, the district court that previously ruled on the issue determined that Minnesota's No Fault Act permits deductibles which could reduce coverage below its listed minimum amounts. Aarvig v. Liberty Mut. Fire Ins. Co., 287 F. Supp. 2d 1000, 1003–05 (D. Minn. 2003). The Minnesota legislature has amended § 65B.44 three times since Aarvig was decided, but it has not changed the statute to undermine that case's interpretation of the law. We assume that the legislature has acted with full knowledge of these developments. See Comm'r of Revenue v. Dahmes Stainless, Inc., 884 N.W.2d 648, 656 (Minn. 2016). We may therefore assume legislative approval of Aarvig's reading of the No Fault Act.

We thus agree with the Aarvig court that § 65B.44 allows insurers to offer policies with deductibles which reduce coverage below $20,000 for medical expenses and $20,000 for economic loss. The district court properly dismissed plaintiffs' claim.

IV.

For these reasons we affirm the district court.

_____