775 A.2d 1262

JOAO ZACARIAS, PLAINTIFF–APPELLANT, v. ALLSTATE INSURANCE COMPANY AND GEORGE D. SINCOX, DEFENDANTS AND THIRD–PARTY PLAINTIFFS–RESPONDENTS, v. MARIA ZACARIAS, THIRD–PARTY DEFENDANT.

Argued February 14, 2001—Decided July 3, 2001.

*Gary Alan Blaustein* argued the cause, for appellant.

*John G. Tinker, Jr.,* argued the cause, for respondents, *(Leary, Bride, Tinker & Moran,* attorneys).

The opinion of the Court was delivered by

VERNIERO, J.

In this declaratory judgment action, plaintiff seeks indemnification from defendant insurer in connection with a suit brought against him by his wife for injuries sustained in a boating accident. Specifically, plaintiff asks that we set aside the intra-family exclusion in his boatowner's insurance policy. The trial court ruled in favor of the insurer. A divided panel of the Appellate Division likewise denied plaintiff his requested relief, concluding that the exclusion was plainly written and thus valid. We agree and affirm.

I.

Plaintiff owned a boat insured by Allstate Insurance Company (Allstate). Plaintiff's boatowner's policy consists of eighteen pages, including the table of contents, with two columns of print on each page, in addition to a two-page declarations sheet. The declarations sheet outlines the coverages and limits of liability in dollar amounts as well as the premiums by item. The declarations sheet also indicates that the coverages and limits of liability are "SUBJECT TO THE FOLLOWING FORMS AND ENDORSEMENTS." There are four such forms and endorsements listed, the first of which is "BOATOWNERS POLICY."

The boatowner's policy is written in regular and bold type. On page three, the definitions page, the policy reads, " 'Insured person'—means **you** and, if a resident of **your** household: a) any relative; and b) any dependent person in **your** care." On page twelve, there is a heading "**Losses We Do Not Cover.**" On the next page, still under that heading, the policy includes an intra-family exclusion that reads: "**We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person.**"

On September 3, 1995, plaintiff was operating his boat with his wife on board. During that trip, plaintiff allegedly operated the boat in a negligent manner and, as a result, his wife suffered injuries. Plaintiff submitted a claim to Allstate on behalf of his wife, but the carrier disclaimed coverage based on the intra-family exclusion in the policy. Thereafter, plaintiff's wife sued plaintiff for her injuries.

Allstate provided a defense for plaintiff under a reservation of rights. Plaintiff then filed this declaratory judgment action against Allstate seeking to void the intra-family exclusion. In the alternative, plaintiff sought to compel the carrier to indemnify him because of the insurer's alleged failure to inform plaintiff of the exclusion. The underlying injury case and the declaratory action were consolidated. Both parties filed motions for summary judgment. The trial court denied plaintiff's motion and granted defendant's motion, thereby dismissing plaintiff's action.

With one member of the panel dissenting, the Appellate Division affirmed the trial court's disposition. *Zacarias v. Allstate Ins. Co.*, 330 *N.J.Super.* 231, 749 *A.*2d 394 (App.Div.2000). The majority held that the policy was free of ambiguity and was to be given its "plain and ordinary meaning." *Id.* at 234, 749 *A.*2d 394. The dissenter concluded that the policy should be read to conform to the reasonable expectations of the insured, explaining that plaintiff had purchased insurance with the intention of covering all legally cognizable liability claims arising from the use of his boat. *Id.* at 236–37, 749 *A.*2d 394 (Pressler, P.J.A.D., dissenting). Plaintiff filed this appeal as of right. *R.* 2:2–1(a).

## II.

### A.

We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies. *Gibson v. Callaghan,* 158 *N.J.* 662, 669, 730

*A.*2d 1278 (1999). In the first instance, the words of an insurance policy are to be given their plain, ordinary meaning. "In the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased." *Id.* at 670, 730 *A.*2d 1278 (quotation and citation omitted). However, "[i]nsurance policies are contracts of adhesion and as such, are subject to special rules of interpretation." *Ibid.* (citing *Longobardi v. Chubb Ins. Co.,* 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990); *Meier v. N.J. Life Ins. Co.,* 101 *N.J.* 597, 611–12, 503 *A.*2d 862 (1986)). When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning. *Id.* at 671, 503 *A.*2d 862. " 'The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.' " *Sparks v. St. Paul Ins. Co.,* 100 *N.J.* 325, 338–39, 495 *A.*2d 406 (1985) (quoting R. Keeton, *Insurance Law* 351 (1971); R. Keeton, *Insurance Law Rights at Variance with Policy Provisions,* 83 *Harv. L.Rev.* 961, 967 (1970)).

That fundamental rule of interpretation, known as the doctrine of reasonable expectations, has long been a part of our law. This Court invoked the doctrine in *Kievit v. Loyal Protective Life Insurance Co.,* 34 *N.J.* 475, 170 *A.*2d 22 (1961). In *Kievit,* the plaintiff owned an accident insurance policy that covered losses " 'resulting directly and independently of all other causes from accidental bodily injuries,' " but not losses " 'resulting from or contributed to by any disease or ailment.' " *Id.* at 477, 170 *A.*2d 22. While at work, the plaintiff sustained an injury that activated or caused Parkinson's disease-like symptoms over his entire body. *Id.* at 478, 170 *A.*2d 22. The symptoms completely disabled him. *Ibid.* The insurer compensated the plaintiff for several months, then stopped payment on the ground that a pre-existing disease or ailment was contributing to his losses. *Ibid.*

The Court held that a pre-existing, dormant condition was not a disqualifier under the terms of the contract. *Id.* at 490–91, 170 *A.*2d 22. The Court reasoned that the distinction between accidental injuries that cause disability on their own and accidental injuries that trigger pre-existing ailments was too fine for a layperson to anticipate in advance of purchasing an insurance policy. "[Insureds] should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" *Id.* at 482, 170 *A.*2d 22 (citation omitted). The Court also noted:

[T]he court's goal in construing an accident insurance policy is to effectuate the reasonable expectations of the average member of the public who buys it; he may hardly be expected to draw any subtle or legalistic distinctions based on the presence or absence of the exclusionary clause for he pays premiums in the strong belief that if he sustains accidental injury which results (in the commonly accepted sense) in his disability he will be indemnified and not left empty-handed on the company's assertion that his disability was caused or contributed to by a latent disease or condition of which he was unaware and which did not affect him before the accident.

[*Id.* at 488–89, 170 *A.*2d 22.]

The Court reached a similar conclusion in *Gerhardt v. Continental Insurance Cos.,* 48 *N.J.* 291, 225 *A.*2d 328 (1966). There, the plaintiff purchased a homeowner's policy. *Id.* at 292, 225 *A.*2d 328. The language of the policy excluded a worker's compensation claim by a domestic employee. To discover that exclusion, the insured would have had to cross-reference several provisions deep into the contract. *Id.* at 293–94, 225 *A.*2d 328. Citing *Kievit,* the Court concluded that the plaintiff's reasonable expectation of coverage against a worker's compensation claim should be fulfilled. *Id.* at 300, 225 *A.*2d 328. In so doing, we described the confusing nature of the policy, observing that "[it] continue[d] over many printed pages in small print and with much obscure terminology." *Id.* at 293, 225 *A.*2d 328. We also stated:

[T]he exclusionary clause in the policy before us was neither conspicuous nor plain and clear.... [O]nly a very hardy soul would have plowed through all of the fine print here in an effort to understand the many terms and conditions.... [I]t seems highly unlikely that the ordinary insured would have so understood it on his or her own reading.

[*Id.* at 298, 299, 225 *A.*2d 328.]

In other instances, this Court has found no ambiguity in insurance contracts and thus enforced their terms as written. One such case is *Di Orio v. New Jersey Manufacturers Insurance Co.*, 79 *N.J.* 257, 398 *A.*2d 1274 (1979). In that case, the plaintiff was the insured's son who used a vehicle, owned by the insured's business and furnished for the insured's regular use, as a second family car. *Id.* at 266, 398 *A.*2d 1274. The insurance policy for the family car covered the plaintiff when he drove a "non-owned automobile," which was defined as " 'an automobile . . . not owned by or furnished for the regular use of either the named insured or any relative[.]' " *Id.* at 263, 398 *A.*2d 1274. The insured's son drove the business-owned car and had an accident in which an infant was badly injured. *Id.* at 261, 398 *A.*2d 1274. The insurer disclaimed coverage because, it argued, the policy unambiguously excepted non-owned cars that the insured's family (either the insured or his son) regularly used. *Ibid.* The plaintiff argued that the policy should have covered the vehicle when he drove it because he did not regularly use the business-owned car. *Id.* at 268–69, 398 *A.*2d 1274. The plaintiff claimed that the policy was ambiguous and should be construed consistent with the insured's reasonable expectations. *Id.* at 267, 398 *A.*2d 1274.

The Court held in favor of the insurer, concluding that the doctrine of reasonable expectations did not apply. *Id.* at 269–70, 398 *A.*2d 1274. The coverage and the definition provisions relating to "non-owned" automobiles were on the first page of the policy, making them clear and conspicuous to the insured. *Id.* at 270, 398 *A.*2d 1274. The Court found that the non-owned automobile provisions had fulfilled their purpose, which was to prevent an insured from obtaining coverage for multiple cars when paying for insurance on only one. *Id.* at 269–70, 398 *A.*2d 1274. The Court noted that "[t]he case at hand does not pose the situation where the entangled and professional interpretation of an insurance underwriter is pitted against that of an average purchaser of insurance." *Id.* at 270, 398 *A.*2d 1274.

Similarly, in *Weedo v. Stone–E–Brick, Inc.*, 81 *N.J.* 233, 235–36, 405 *A.*2d 788 (1979), the Court held that a "business risk" provision in a builder's insurance contract was unambiguous and enforceable. Stone–E–Brick's workers allegedly performed shoddy stucco and roofing work on two different jobs. When the customers sued for the costs of replacing the work, Stone–E–Brick sought to compel its insurer to take over its defense. *Id.* at 236, 405 *A.*2d 788. Stone–E–Brick's insurance policy covered liability for torts in the form of bodily injury caused by its work, but not for replacement costs of work done poorly. *Id.* at 241, 405 *A.*2d 788.

The policy contained an exclusion for " 'property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.' " *Ibid.* This Court enforced the exclusion. In so doing, however, we reaffirmed the doctrine of reasonable expectations:

> We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage. In that instance, application of the test of the objectively reasonable expectation of the insured often will result in benefits coverage never intended from the insurer's point of view.
>
> [*Id.* at 247, 405 *A.*2d 788.]

Based on that test, the Court concluded that the language of the policy should have been clear to the insured and was thus sustainable.

New Jersey courts have found intra-family exclusions, similar to the one contained in plaintiff's policy, to be unambiguous. For example, in *Foley v. Foley*, 173 *N.J.Super.* 256, 414 *A.*2d 34 (App.Div.1980), the Appellate Division found valid an intra-family exclusion within the context of a homeowner's insurance policy. In *Foley*, the plaintiff instituted suit against her husband for injuries she incurred due to his alleged negligence or an alleged assault. *Id.* at 257, 414 *A.*2d 34. The policy excluded bodily injuries to any insured, which included a spouse. *Id.* at 258, 414 *A.*2d 34. The Appellate Division dismissed the plaintiff's argu-

ment that the language of the policy was unclear. "The coverage provisions and the exclusions are written one following the other. The exclusions are in bolder type so that one reading the policy will have his attention brought to the terms of the exclusions. The exclusion itself is plain and unambiguous." *Id.* at 260, 414 *A.*2d 34.

In *Knoblock v. Prudential Property & Casualty Insurance Co.,* 260 *N.J.Super.* 127, 615 *A.*2d 644 (App.Div.1992), the Appellate Division held valid another intra-family exclusion. There, the plaintiffs sued family members on behalf of their infant son who had been injured when he fell off a minibike that his aunt and uncle had permitted him to ride. *Id.* at 129, 615 *A.*2d 644. The aunt and uncle filed a counterclaim against the mother of the infant and a third-party action against the boy's father seeking indemnity or contribution. *Ibid.*

The plaintiffs' homeowner's insurance policy covered the costs of any injuries caused by an insured, and pledged to provide a defense to any claim. *Id.* at 129–30, 615 *A.*2d 644. It also provided, however, " '[w]e do not cover bodily injury to you or any insured[.]' " *Id.* at 130, 615 *A.*2d 644. The infant son was an insured under the terms of the policy. *Id.* at 128, 615 *A.*2d 644. The court held that when bodily injury is sustained by "any insured," the exclusion plainly withdraws its coverage of indemnity claims. *Id.* at 130, 615 *A.*2d 644. *See also Horesh v. State Farm Fire & Cas. Co.,* 265 *N.J.Super.* 32, 38–39, 625 *A.*2d 541 (App.Div. 1993) (enforcing intra-family exclusion in third-party claim of husband against wife for injury to son). For completeness, we note also that in the automobile insurance context, courts have held intra-family exclusions void, not on the ground of ambiguity, but because the Legislature's automobile insurance scheme has rendered such provisions violative of public policy. See *Kish v. Motor Club of Am. Ins. Co.,* 108 *N.J.Super.* 405, 261 *A.*2d 662 (App.Div.), *certif. denied,* 55 *N.J.* 595, 264 *A.*2d 68 (1970).

Courts in other jurisdictions also have analyzed intra-family exclusions and found them to be unambiguous. In *Suba v. State*

*Farm Fire & Casualty Co.*, 114 *A.D.*2d 280, 498 *N.Y.S.*2d 656, 657 (1986), *appeal denied*, 67 *N.Y.*2d 610, 504 *N.Y.S.*2d 1023, 495 *N.E.*2d 356, *appeal dismissed*, 68 *N.Y.*2d 665, 505 *N.Y.S.*2d 1029, 496 *N.E.*2d 242 (1986), the following language in a homeowner's policy was held to be valid:

"Coverage L—Personal Liability and Coverage M—Medical Payments to Others do not apply to: ... g. bodily injury to you or any insured within the meaning of part (a) or (b) of the definition of insured." Part (a) of the definition of "insured" contained in the policy provides that " 'insured' means you and the following residents of your household: a. your relatives."

The court noted that that "exclusion is clear and unambiguous and plainly applies," and that similar language had been upheld by courts in Washington and California. *Ibid.* (citing *State Farm Gen. Ins. Co. v. Emerson*, 102 *Wash.*2d 477, 687 *P.*2d 1139 (1984); *State Farm Fire & Cas. Co. v. Alstadt*, 113 *Cal.App.*3d 33, 169 *Cal.Rptr.* 593 (1980)).

In *Emerson*, a case from the State of Washington, the plaintiff sought coverage for the death of her daughter and injuries to her son-in-law caused by an accident involving the antenna atop her home. At the time of the accident both victims lived with the insured. *Emerson, supra*, 102 *Wash.*2d at 479, 687 *P.*2d 1139. The court described the policy as follows:

The exclusion clause at issue reads, "This policy does not apply: 1. Under Coverage E—Personal Liability ... (g) to bodily injury to any insured within the meaning of parts (1) and (2) of definition of insured." ... The definitions section contained the following language: "(a) 'Insured' means (1) The Named Insured stated in the Declarations of this policy; (2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty one in the care of any Insured[.]"

[*Id.* at 479 n. 1, 687 *P.*2d 1139.]

The plaintiff argued that the policy was ambiguous because its liability, exclusion, and definition sections were separate from one another. *Id.* at 484, 687 *P.*2d 1139. The court rejected her argument, observing:

[I]t is hard to imagine how the language could be more clear.... The exclusion clauses are all in capital letters. The definition section is explicitly referenced in the exclusion clause. The fact that a policy is long, and that pertinent language is not contained on a single page does not, in itself, render the policy structurally

ambiguous. This is particularly so when the limiting language is clearly set off as it is here.

[*Id.* at 484–85, 687 *P.*2d 1139.]

*See also Salviejo v. State Farm Fire & Cas. Co.,* 87 *Haw.* 430, 958 *P.*2d 552, 565 (1998) (holding intra-family exclusion in homeowner's policy was unambiguous); *Reinsurance Ass'n of Minn. v. Hanks,* 539 *N.W.*2d 793, 796 (Minn.1995) (ruling intra-family exclusion in farm multiperil policy unambiguously covered child under age twenty-one).

### B.

 Broadly stated, we discern two rules from the above cases. First, in enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, *Kievit, supra,* 34 *N.J.* at 482, 170 *A.*2d 22, cannot be understood without employing subtle or legalistic distinctions, *id.* at 488, 170 *A.*2d 22, is obscured by fine print, *Gerhardt, supra,* 48 *N.J.* at 293, 225 *A.*2d 328, or requires strenuous study to comprehend, *Sparks, supra,* 100 *N.J.* at 339, 495 *A.*2d 406. Second, the plain terms of the contract will be enforced if the "entangled and professional interpretation of an insurance underwriter is [not] pitted against that of an average purchaser of insurance," *Di Orio, supra,* 79 *N.J.* at 270, 398 *A.*2d 1274, or the provision is not so "confusing that the average policyholder cannot make out the boundaries of coverage," *Weedo, supra,* 81 *N.J.* at 247, 405 *A.*2d 788.

 Applying those tenets, we hold that the terms of plaintiff's boatowner's policy are unambiguous and should be enforced. The policy's language is direct and ordinary. Large and bold type is used, and the contract provisions are clearly spaced. In our view, the intra-family exclusion does not require an entangled and professional interpretation to be understood. The definitions page clearly describes "insured person" to include any relative living in the household. The policy explicitly disclaims coverage for inju-

ries to insureds. We thus agree with the Appellate Division that plaintiff's policy does not cover the injuries sustained by plaintiff's spouse.

Plaintiff urges a contrary conclusion because the policy's declarations sheet does not expressly list the intra-family exclusion. The wording of an insurance policy's declarations sheet was determinative in *Lehrhoff v. Aetna Casualty & Surety Co.*, 271 *N.J.Super.* 340, 346–47, 638 *A.*2d 889 (App.Div.1994). In that case, the Appellate Division concluded that the reasonable expectations of the insured, as formed on the basis of the declarations sheet, could not be defeated by the boilerplate text contained elsewhere in the policy. The court stated:

> There has been little judicial consideration of the import of the declaration page of an insurance policy in terms of construction of the policy as a whole and in terms of its capacity to define the insured's reasonable expectations of coverage. We, however, regard the declaration page as having signal importance in these respects.... We are, therefore, convinced that it is the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage. And we are also convinced that reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself so warns the insured.
>
> [*Id.* at 347, 638 *A.*2d 889.]

*See also Gerhardt, supra,* 48 *N.J.* at 298, 225 *A.*2d 328 (observing that policy was ambiguous in part because exclusion was not on declarations sheet).

We share the sentiments expressed by the Appellate Division in *Lehrhoff* in respect of the importance of the declarations sheet. We do not, however, interpret *Lehrhoff* to require an insurer to include an intra-family exclusion on the policy's declarations sheet in all cases. After an extensive analysis of the declarations sheet, as compared to the limits of coverage contained elsewhere in the policy, the *Lehrhoff* court found that the general definition section would "unfairly defeat the insured's reasonable expectations" of coverage. *Id.* at 350, 638 *A.*2d 889. In this case, in contrast, we find no ambiguity, inconsistency, or contradiction between the declarations sheet and the body of plaintiff's policy. As noted, the declarations sheet alerts the insured that the coverages and limits

of liability are subject to the provisions of the policy, one of which is the intra-family exclusion. Also as noted, the exclusion itself is written in direct and ordinary terms.

Similarly, in *Werner Industries, Inc. v. First State Insurance Co.*, 112 *N.J.* 30, 548 *A.*2d 188 (1988), this Court harmonized the declarations page with the balance of the policy and found no ambiguity. We approvingly noted the rationale expressed in other jurisdictions that "courts should not focus 'on one sentence of th[e] policy's "Conditions" section ... to the exclusion of the balance of the contract. Such an interpretation is distorted and legally inappropriate.' " *Id.* at 37, 548 *A.*2d 188 (quoting *Wurth v. Ideal Mut. Ins. Co.*, 34 *Ohio App.*3d 325, 518 *N.E.*2d 607, 612 (1987)). *See also Emerson, supra,* 102 *Wash.*2d at 484–85, 687 *P.*2d 1139 (rejecting argument that policy was ambiguous because it required insured to cross-reference exclusion with other provisions).

In sum, an insurance contract is not *per se* ambiguous because its declarations sheet, definition section, and exclusion provisions are separately presented. A rule of construction forcing insurers to avoid all cross-referencing in policies would require them to reprint the entire definition section on each page of the policy, or to define each term every time it is used. That proliferation of fine print would itself demand strenuous study and run the risk of making insurance policies more difficult for the average insured to understand.

### III.

Our holding today should not be construed as a lessening of protections for insureds. The doctrine of reasonable expectations remains unchanged. Insurers should continue to make the language in their policies accessible to the average insured. We emphasize, as did the court in *Lehrhoff,* that the one page most likely to be read and understood by the insured is the declarations sheet. Insurers are well advised to explore ways to incorporate as

much information as may be reasonably included in the declarations sheet.

Insurance contracts are complex instruments. They are issued to assist individuals to plan rationally for the unforeseen challenges of an unpredictable future. For such transactions to be sustainable, both sides must be able to rely on the plain meaning of the contracts into which they respectively enter. Courts should construe insurance policies against the insurer, consistent with the reasonable expectations of insureds, when those policies are overly complicated, unclear, or written as a trap for the unguarded consumer. *Kievit, supra,* 34 *N.J.* at 475, 170 *A.*2d 22.

In the same vein, our jurisprudence will continue to expect companies to write their contracts in a straightforward manner. The policy at issue here passes muster for the reasons already noted, but it is far from perfect. For example, it would have been clearer if the definition of insured had a cross-reference to the intra-family exclusion, or vice versa. Moreover, the insurer could have more conspicuously reminded plaintiff on the declarations sheet that certain exceptions applied to coverage and that to understand those exceptions, the insured had to cross reference the policy's coverage and definitions sections. Although we urge the insurance industry to write more discernible policies to avoid future disputes, we conclude that plaintiff's policy is sufficiently clear when reviewed under the rules of construction traditionally employed in this setting.

## IV.

The judgment of the Appellate Division is affirmed.

LONG, J., dissenting.

I do not subscribe to the judgment of my colleagues in this rather straightforward case. Their conclusion that the boat liability policy purchased by Zacarias is not ambiguous is footed on a

Herculean effort by an insured. The scope of that effort was set forth precisely by Judge Pressler who dissented below:

> To begin with, the declarations page of this policy identifies only plaintiff-husband, Joao Zacarias. Nor is he even referred to as the "named insured," a designation which, to a careful reader of the declarations page, might suggest some limitation or qualification to come. Certainly the declarations page in no way itself suggests that anyone else is an insured. This is, as we have pointed out, both a casualty and a liability policy. The terms of the liability coverage appears on page ten, which one could locate there either by consulting the table of contents on page one of the policy or by simply flipping through the policy. The section begins with the heading "Losses We Cover." Those losses are defined as
>
>> all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage resulting from the ownership, maintenance, or use of covered water craft, boat equipment or boat trailers.
>
> There is, of course, nothing in this definition to suggest that there is any insured person other than the person identified on the declarations page. Thus the sole person who is named on the declarations page could safely assume that if he became legally obligated to pay damages to a family member because of his negligence, he would be covered therefor.
>
> Then comes the second portion of the liability coverage entitled "Losses We Do not Cover." In addition to the usual exclusions for intentional or criminal conduct of an insured person, illegal or business use of the boat, workers' compensation claims, and the like, is paragraph 2, which provides in full that:
>
>> We do not cover bodily injury to an insured person or property damage to property owned by an insured person.
>
> There is still nothing to suggest to the reader of the liability coverage that there is any insured person subject to this exclusion other than the insured named in the declarations page.
>
> In order for the reader of the policy to determine who is intended by the insurer to be embraced within the phrase "insured person" for purposes of the liability exclusion, he must refer to paragraph 3 of the definition section appearing on page three of the policy and to which nothing in the liability coverage sections on page ten directs him. And even though the text of the liability exclusion clause does not use the pronoun "you" or "your," he would nevertheless have to perceive the relevance and significance of the page three, paragraph 1 definition of "you" or "your" as including the resident spouse of the insured named on the declarations page. Then, if he properly completes this unmapped exercise in contract construction and if does so at the time the policy is delivered to him—both of which eventualities I regard as remote in the case of the average buyer of insurance—he may come to understand that even though he is exclusively identified on the declarations page and thus appears to be the only insured, an "insured person" also includes "any relative" and "any dependent person in your care" if "resident in your household." And then, if he is quick witted or experienced in such matters, he may finally indeed come to realize that the "insured person" whose liability

claims are excluded from coverage on page ten are the members of his family with whom he lives and who are free, as a matter of law, to sue him for negligence and to obtain damages for personal injury from him.

[*Zacarias v. Allstate Ins. Co.*, 330 *N.J.Super.* 231, 238–240, 749 *A.*2d 394 (App.Div.2000)(Pressler, P.J.A.D., dissenting).]

The burden of deciphering this policy renders it ambiguous, thus justifying resort to the "reasonable expectations" doctrine that, in the face of ambiguity, requires us to honor the objectively reasonable expectations of insurance applicants even where a " 'painstaking study of the policy provisions would have negated those expectations.' " *Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325, 338–39, 495 *A.*2d 406 (1985)(quoting R. Keeton, *Insurance Law* 351 (1971); R. Keeton, *Insurance Law Rights at Variance with Policy Provisions*, · 83 *Harv. L.Rev.* 961, 967 (1970)). Applied here, the reasonable expectations doctrine requires a ruling in favor of Zacarias who, like any purchaser of a boat liability policy, reasonably expected to be covered for all legally cognizable liability claims against him arising out of the use of the boat—including legally recognized interspousal claims. *See Merenoff v. Merenoff*, 76 *N.J.* 535, 557, 388 *A.*2d 951 (1978) (holding that doctrine of interspousal tort immunity is abrogated as bar to civil suit between married persons for damages for personal injuries). *See also Foldi v. Jeffries*, 93 *N.J.* 533, 549, 461 *A.*2d 1145 (1983) (concluding that doctrine of parental immunity will no longer insulate parent from liability for willful or wanton failure to supervise children). Indeed, in purchasing $500,000 worth of boat liability insurance, what reasonable person would not expect coverage for injuries sustained by his family members, the people most likely to be on the boat?

That belief, in addition to being objectively reasonable standing alone, has particular resonance in light of the equally reasonable conclusion by an insurance applicant that, generally, boat liability insurance is an analogue to auto insurance, except for the means of conveyance. To be sure, we have distinguished auto from other forms of insurance from a public policy perspective because auto insurance is compulsory. *Horesh v. State Farm Fire & Cas. Co.*,

265 *N.J.Super.* 32, 37, 625 *A.*2d 541 (App.Div.1993). Nevertheless, and despite that legal distinction, there is nothing about a boat liability policy to alert an insurance applicant that he is not purchasing coverage similar to that purchased for an automobile.

Although I am delighted that the majority has acknowledged the viability of *Lehrhoff v. Aetna Cas. and Sur. Co.*, 271 *N.J.Super.* 340, 638 *A.*2d 889 (App.Div.1994), one need only return to the language of *Lehrhoff* to divine the fallacy of the conclusion that the declarations page in this case passes muster.

> There has been little judicial consideration of the import of the declaration page of an insurance policy in terms of the construction of the policy as a whole and in terms of its capacity to define the insured's reasonable expectations of coverage. We, however, regard the declaration page as having signal importance in these respects. A personal automobile insurance policy is a bulky document, arcane and abstruse in the extreme to the uninitiated, unversed and, therefore, typical policyholder. We are persuaded, therefore, that a conscientious policyholder, upon receiving the policy, would likely examine the declaration page to assure himself that the coverages and their amounts, the identity of the insured vehicle, and the other basic information appearing thereon are accurate and in accord with his understandings of what he is purchasing. We deem it unlikely that once having done so, the average automobile policyholder would then undertake to attempt to analyze the entire policy in order to penetrate its layers of cross-referenced, qualified, and requalified meanings. Nor do we deem it likely that the average policyholder could successfully chart his own way through the shoals and reefs of exclusions, exceptions to exclusions, conditions and limitations, and all the rest of the qualifying fine print, whether or not in so-called plain language. We are, therefore, convinced that it is the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage. And we are also convinced that reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured.
>
> [*Lehrhoff, supra*, 271 *N.J.Super.* at 346–47, 638 *A.*2d 889.]

In light of *Lehrhoff,* at the very least, the declarations page in Zacarias's boat liability policy should have alerted him that the policy contained an intra-family exclusion, eliminating from liability coverage the persons most likely to be on the boat. In other words, he should have been put on notice that his family members, whose interests were a good part of the reason he purchased the policy, could not invoke its protection. For those reasons and for

the reasons expressed in Judge Pressler's opinion, I respectfully dissent.

Justice ZAZZALI joins in this opinion.

*For affirmance*—Chief Justice PORITZ and Justices STEIN, VERNIERO and LaVECCHIA—4.

*For reversal*—Justices LONG and ZAZZALI—2.