788 A.2d 925 (2002)
347 N.J. Super. 100
AMERICAN FIRE & CASUALTY INSURANCE COMPANY and the Ohio Casualty Insurance Group, Plaintiffs-Appellants,
v.
Joseph MANZO, Phyllis Manzo, and Manco, Inc., Defendants/Third-Party Plaintiffs-Respondents, and
Charles Richard Applegate, Defendant,
v.
Prima Corporation and Captains Agency, Third-Party Defendant, and
Farmers Mutual Fire Assurance Association of New Jersey, Third-Party Defendant, Fourth-Party Plaintiff-Respondent/Cross-Appellant,
v.
York-Jersey Underwriters Agency, Inc., Fourth-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 2001.
Decided January 29, 2002.
*926 Landry Belizaire, argued the cause for appellants American Fire & Casualty Insurance Company and the Ohio Casualty Insurance Group (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys, Livingston; Alan H. Bernstein, of counsel, Morristown; Mr. Bernstein and *927 Stuart J. Polkowitz, on the brief, Roseland).
Beth D. Pollack, Neptune, argued the cause for defendants/third-party plaintiffs-respondents Joseph and Phyllis Manzo (McLaughlin, Bennett, Gelson & Cramer, attorneys; John F. Gelson, of counsel; Ms. Pollack, on the brief).
Mauro C. Casci, Leonardo, argued the cause for third-party defendant, fourth-party plaintiff-respondent/cross-appellant Farmers' Mutual Fire Insurance Association of New Jersey.
Timothy E. Haggerty, Wall, argued the cause for fourth-party defendant-respondent York-Jersey Underwriters Agency, Inc. (Stephen E. Gertler, attorney; Mr. Haggerty, on the brief).
Before Judges WEFING, LESEMANN and PARRILLO.
The opinion of the court was delivered by WEFING, J.A.D.
This matter is before the court on an appeal and cross-appeal from orders entered by the trial court adjudicating a coverage dispute between carriers and awarding counsel fees to the insured. After carefully reviewing the record in light of the contentions advanced on appeal, we affirm in part and reverse in part.
The dispute involves determining the proper method to allocate responsibility among the carriers to contribute to a $1.1 million settlement negotiated with Charles Applegate for injuries he received on November 11, 1992 while clearing land owned by Joseph and Phyllis Manzo in Colts Neck, New Jersey.
The Manzos had purchased the property in 1968, a twenty-two acre parcel, taking title as tenants by the entirety. They later subdivided into building lots, naming the entire tract Woodbury Estates. In 1992, they executed a contract to sell one lot within the parcel to Prima Corporation. Prima intended to build a single-family home on the lot for resale. The contract included a representation by the Manzos that all necessary improvements to the site had been completed, with Prima only required to obtain a building permit. The contract anticipated a closing to occur in December 1992. Applegate was an employee of Prima; Prima sent him to the site in November, apparently for inspection and preliminary site preparation.
Applegate, as part of that preparation, undertook to remove a tree. The tree began to topple toward him and Applegate tried to run away. He was unsuccessful, however, as he fell into a sinkhole. The tree collapsed upon him, injuring him severely and leaving him a paraplegic. He filed suit for his injuries, naming as defendants the Manzos; one of their corporate entities, Manco, Inc.; and a number of John Doe defendants. He alleged that the Manzos had, over the course of time, improperly deposited tree stumps and other items on the property, which led to formation of the sinkhole into which he fell.
Joseph and Phyllis Manzo own and operate an active road construction and real estate site preparation business, which they conduct through two corporations, Manco, Inc., and G. Manzo, Inc. They each own fifty percent of the stock of both corporations, and Joseph is president and Phyllis secretary/treasurer of both. Joseph testified in depositions that at the time of Applegate's accident, Manco was primarily engaged in road work, G. Manzo in site work.
The Manzos insured their business activities through four policies of insurance, the first of which, American Fire & Casualty Insurance Co. (American Fire) policy BLA (93)00389233, was a commercial liability *928 policy. The named insureds were Manco, Inc., J. Manco, Inc., and G. Joseph Manzo, and the policy limits were $1 million per occurrence. The second, issued by Ohio Casualty Insurance Co., (Ohio), policy BXO (93)389233, was a commercial umbrella excess policy; the named insureds were Manco, Inc., J. Manzo, Inc. and G. Joseph Manzo, and the policy limit was again $1 million. At one point before the trial court, the parties disputed the extent of the coverage afforded by the Ohio excess policy, i.e., whether it provided $1 million or $5 million in coverage. The trial court initially concluded $1 million but later revised that figure to $5 million. In light of our disposition of the issues, it is unnecessary for us to address the question. We have, simply for ease of reference, adopted the $1 million figure. We note, for the sake of completeness, that American Fire is a member of the Ohio Casualty group of insurance companies.
The Manzos also held a special multi-peril policy issued by Farmers Mutual Fire Assurance Association of New Jersey (Farmers), policy SMP-912093, and another commercial excess policy issued by Farmers, policy CEU 2162. The named insureds on both Farmers' policies were Joseph and Phyllis Manzo, and each afforded $1 million in coverage. All four policies were in effect on the date of Applegate's accident.
Applegate commenced suit in 1994 for his injuries, and the Manzos forwarded a copy of the summons and complaint to American Fire, requesting coverage under its commercial liability policy. American Fire responded that it would assign counsel and defend the matter, but was doing so under a reservation of rights in light of the fact that, although the complaint referred to the accident having occurred in 1992, it had not been notified until 1994.
The Applegate litigation proceeded forward apparently uneventfully until March 1996, when American Fire, through a claims manager, wrote to the Manzos, informing them that its investigation had disclosed that they owned the property in question as partners, and thus had no coverage because they had failed to disclose that partnership to American Fire. It cited the following language in its policy:
No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declaration.
American Fire and Ohio, which had a similar clause in its excess policy, then commenced a declaratory judgment action, seeking a determination that the Manzos were not covered under their policies. That declaratory judgment action was consolidated with the Applegate litigation, with the directive that the coverage issues be determined in advance of the liability claim.
The Manzos retained counsel to defend them in the Applegate litigation and the declaratory judgment action. As the declaratory judgment progressed, the Manzos added additional parties, seeking coverage from Farmers, as well as asserting claims of professional negligence against the insurance broker and underwriter agencies involved in obtaining the policies.
The parties in the declaratory judgment action moved before the trial court for summary judgment to determine the respective liabilities of the insurance companies to contribute to Applegate's claim. The trial court concluded that American Fire's policy was primary, that the excess policies issued by Ohio and Farmers each afforded coverage, and that they were obligated equally on any excess. Applegate then settled his liability claim for $1.1 million, and the Manzos dismissed their *929 claims against the insurance broker and underwriter. Finally, the trial court then determined that Farmers had to contribute to the Manzos' counsel fees.
American Fire has appealed from the ruling that its policy is primary. As part of that appeal, Ohio argues that its excess policy is "super-excess", i.e., that its excess coverage is secondary to the excess coverage provided by Farmers. Farmers has cross-appealed, contending its excess policy is inapplicable to this claim. It also maintains American Fire should be estopped from denying coverage. We have concluded, after reviewing the record and considering the arguments, that the trial court correctly concluded that American Fire's policy covered this risk, and, therefore, we affirm that determination. We have also determined that the trial court erred when it concluded that Farmers' excess policy afforded coverage and we thus reverse that determination. Because we are satisfied that American and Ohio afforded coverage, we have no occasion to address the issues of estoppel and primacy of coverage between the excess policies of Ohio and Farmers.

I
We turn first to American Fire's claim that the Manzos were excluded from coverage under its policy. The premise of its argument is that the Manzos owned this property as a partnership and that the policy specifically excluded coverage for undisclosed partnerships or joint ventures. We are satisfied the trial court correctly rejected this premise.
Under the Uniform Partnership Law, N.J.S.A. 42:1-1 to -49, which was in effect when these policies were issued, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." N.J.S.A. 42:1-6. Because of the individual responsibility of one partner for the acts of another, N.J.S.A. 43:1-9; N.J.S.A. 42:1A-13, American Fire's exclusion of unscheduled partnerships could, in appropriate circumstances, be considered a reasonable attempt to define the scope of its risk.
Elements of a partnership "include agreement, sharing profits and losses, ownership and control of the partnership's property and business, community of power, rights upon dissolution and the conduct of the parties towards third persons, among others." Kozlowski v. Kozlowski, 164 N.J.Super. 162, 171, 395 A.2d 913 (Ch. Div.1978), aff'd, 80 N.J. 378, 403 A.2d 902 (1979). A joint venture is similar in nature, but has a more limited business objective. Presten v. Sailer, 225 N.J.Super. 178, 191, 542 A.2d 7 (App.Div.1988).
The only evidence of partnership between Joseph and Phyllis Manzo is that they owned this parcel as joint tenants by the entirety and, on their joint income tax return, declared the income received from the sale of the property.
American Fire points to two out-of-state cases in support of its position that the Manzos constituted a partnership, Ins. Agents, Inc. v. Zimmerman, 381 N.W.2d 218 (S.D.1986) and Gangl v. Gangl, 281 N.W.2d 574 (N.D.1979). Neither, however, involved a question of coverage for purposes of insurance. In Zimmerman, the court concluded that one spouse would be held responsible for payment of insurance premiums due on policies for a business enterprise which both spouses operated as a partnership. In Gangl, the court ruled that a family farm did not constitute a partnership. They provide no substantive support to American Fire's position.
Insurance contracts are contracts of adhesion and any ambiguities must be construed in favor of the insured. Gibson v. Callaghan, 158 N.J. 662, 669-70, *930 730 A.2d 1278 (1999). Further, they must be construed to comport with the objectively reasonable expectations of the insured. "When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595, 775 A.2d 1262 (2001). We are satisfied that a married couple would not reasonably expect to be classified as a partnership simply because they sold jointly owned property and declared the proceeds on their joint income tax return.
The trial court's conclusion that the Manzos were covered under the American Fire policy for this risk was entirely correct.

II
We turn now to Farmers' cross-appeal, in which it argues that its excess policy provided no coverage for the Applegate incident. American Fire argues that the nature of the Farmers' policy and the policy language both support a finding of coverage. American Fire maintains that Farmers' policy provides "drop down" coverage, i.e., is intended to fill in any gaps that may develop in any other existing policies. At oral argument, American Fire conceded this argument would be moot if we determined, as we have, that American Fire's policy provided coverage for the Applegate claim. Because the extent of American Fire's concession is unclear, we shall analyze the policy language.
Farmers provided two policies to the Manzos, as noted earlier. There is no contention that the first policy, SMP-912093, provided any coverage for the Applegate claim. That policy, by its terms, only afforded liability coverage for ten certain defined locations, identified by street address; the site of Applegate's accident was not among them. The policy originally covered eleven addresses; one, in Neptune, was deleted in July 1992. Farmers argues that its excess policy, CEU 2162, is similarly limited to those ten defined locations and thus protected from the Applegate suit. According to the record, those ten sites were rental properties owned by the Manzos individually and occupied by third-parties.
Farmers points to the declarations page of its policy, which contains the typed addition, "Locations: (See attached MSO-100)." It is the attached endorsement MSO-100 which lists the ten addresses covered under the policy. Farmers asserts that endorsement limits the scope of its undertaking when it issued this excess policy.
American Fire, on the other hand, points to the policy's insuring clause, under which Farmers agreed to pay on behalf of the Manzos damages for which they were found liable:
because of
(i) personal injury caused by, or
(ii) property damage caused by, or
(iii) advertising liability arising out of an occurrence which takes place during the policy period anywhere in the world.
American Fire points to the phrase "anywhere in the world" and argues that it supersedes the policy's earlier specific geographic limitations. It contends that under that phrase, Farmers' excess policy provided coverage for the site of Applegate's accident in Colts Neck. We are unable to agree.
The Supreme Court has once again recently restated the importance of the declarations page of a policy, noting that "boilerplate text contained elsewhere in *931 the policy" should not override the declarations sheet. Zacarias, supra, 168 N.J. at 602, 775 A.2d 1262. The Court there quoted approvingly from our decision in Lehrhoff v. Aetna Casualty & Surety Co., 271 N.J.Super. 340, 347, 638 A.2d 889 (App.Div.1994), where we wrote "[W]e are also convinced that reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page so warns the insured."
Here, the declarations sheet is clear as to the limited nature of the coverage afforded. The specificity of the declarations sheet should, in our judgment, take precedence over the open-ended ungrammatical phrasing to which American Fire points.
It is clear that the Manzos were sophisticated in business transactions. They carried on a substantial construction business and received the advice of counsel and brokers in meeting their anticipated insurance needs.
It is, moreover, not without significance that the question is presented in the context of a dispute between two carriers as to which of them should shoulder this loss. In such a context, cases which speak of the necessity of meeting the reasonable expectations of the insured have limited utility. The insured is covered; the only question is by whom. It might, indeed, strike some as ironic that American Fire, which acted in a manner so clearly contrary to the reasonable expectations of its insureds by asserting that Joseph and Phyllis Manzo constituted a partnership, relies on that principle to transmit its coverage obligations to another carrier.
We are satisfied that the trial court erred when it ruled that Farmers was obligated to provide coverage to the Manzos for the Applegate claim asserted against them.

III
The final issue to be addressed is the trial court's order directing Farmers to reimburse the Manzos $19,914 for counsel fees they incurred in litigating the liability action and the declaratory judgment action. Farmers Mutual asserts it has no responsibility to contribute to those fees.
Farmers Mutual did not participate in the negotiation of the Applegate settlement, adhering to its position that its insurance policies were not implicated in any manner. The entire amount of the settlement was paid by American Fire and Ohio. As part of the settlement, the Manzos waived any claim they might have to seek counsel fees from American Fire but reserved their right to seek counsel fees from Farmers. At the time the settlement was placed on the record, the parties acknowledged that an appeal would be taken by American Fire and Farmers from the orders holding their policies applicable. The parties further acknowledged that if this court were to determine that neither American Fire nor Farmers had any obligation for this loss, the Manzos would not have to reimburse Ohio the settlement amount.
The Manzos then filed a motion with the trial court, seeking nearly $90,000 in counsel fees from Farmers. After argument and review of the affidavit of services, the trial court concluded that Farmers, having been found responsible for coverage, had a "concomitant obligation" to contribute to counsel fees. The trial court further concluded, however, that Farmers' obligation to contribute to the Manzos' defense costs had to be allocated proportionately. After further argument, the trial court ruled that Farmers was responsible for 25% of the Manzos' fees and costs, and awarded them $19,914.
*932 We are satisfied that in the absence of any responsibility to provide coverage, Farmers cannot be held responsible to contribute to the Manzos' counsel fees. R. 4:42-9(a)(6), for instance, provides for an award of counsel fees in the context of such a declaratory coverage dispute "in favor of a successful claimant." The Manzos are not a successful claimant against Farmers.
Nor can we consider this result unfair to the Manzos. At the time the settlement was placed on the record, they clearly waived any right to seek counsel fees from American Fire. The parties anticipated the possibility that this court could decide the appeal in a manner which could expose the Manzos to personal liability and they accordingly structured the settlement to avert that possibility. Similarly, they had the capacity to condition their waiver of counsel fees from American Fire upon the results of this appeal but they failed to do so. We cannot provide them with a better deal than the one they negotiated on their own behalf.

IV
In sum, the ruling that American Fire provides coverage to the Manzos for the Applegate claim is affirmed. The rulings that Farmers' excess policy provides coverage is reversed, as is the determination that Farmers must contribute to the Manzos' counsel fees.