**CENTENNIAL INSURANCE COMPANY,**

v.

**LITHOTECH SALES, LLC Litho 21, Inc., as assignee of, and successor in interest to, all rights in this action belonging to defendant Lithotech Sales, LLC, Appellant.**

No. 01–1662.

United States Court of Appeals, Third Circuit.

Argued Feb. 5, 2002.

Opinion Filed Feb. 26, 2002.

George P. Birnbaum, Esq. (Argued), New York, NY, for Appellant.

James W. Carbin, Esq. (Argued), Duane, Morris & Heckscher, Newark, NJ, for Appellee.

Before BECKER, Chief Judge, McKEE, and BARRY, Circuit Judges.

## MEMORANDUM OPINION

BARRY, Circuit Judge.

Appellant Litho 21, Inc. ("Litho 21") is the assignee of and successor in interest to the defendant below, Lithotech Sales, LLC. In this capacity, Litho 21 appeals the District Court's grant of summary judgment to plaintiff Centennial Insurance Co. ("Centennial"). We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

We write only for the parties who are familiar with the procedural history and facts of the case, so we need not recite that history and those facts here. Accordingly, we will forthwith address the one argument Litho 21 raises on appeal: the Fraudulent Bills of Lading Clause covers Litho 21's economic loss resulting from the shipment of a Heidelberg printing press different from that described in the bill of lading, and the District Court erred in concluding to the contrary.

The insurance contract in which the Fraudulent Bills of Lading Clause is found is a marine open cargo policy and, thus, as the District Court properly found, the Court's admiralty jurisdiction was invoked. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S.Ct. 368, 99 L.Ed. 337 (1955). "With admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The application of substantive admiralty law does not, however, result in the "automatic displacement of state law." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). State law may provide the rule of decision in an admiralty case so long as it does not conflict with maritime law. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 627 (3d Cir.1994). Courts have generally applied state law when interpreting the language of marine insurance policies. *See, e.g., Wilburn Boat Co.*, 348 U.S. at 321, 75 S.Ct. 368 (applying Texas law to interpret a marine insurance policy); *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir.1998) (applying En-

glish law); *Bank of San Pedro v. Forbes Westar, Inc.*, 53 F.3d 273, 275 (9th Cir. 1995) (applying California law).

██ The inquiry, therefore, became which state law to apply. A court exercising admiralty jurisdiction must apply federal conflict-of-laws principles. *Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 343 (3d Cir.2000). Absent a choice of law clause in a contract, as here, the governing law generally is the law of the forum where the contract is executed and performed. *Valdesa Compania Naviera, S.A. v. Frota Nacional de Petroleiros*, 348 F.2d 33, 38 (3d Cir.1965); see also Restatement (Second) of Conflict of Laws § 188(3) (1971). Accordingly, New Jersey law governs the present policy, which was drafted, signed, and delivered between New Jersey corporations within New Jersey.

██ In New Jersey, the terms of an insurance policy, absent ambiguity, should be given "their plain ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 775 A.2d 1262, 1264 (2001). The Fraudulent Bills of Lading Clause at issue here is not ambiguous, and we will accord the terms of that clause their plain meaning. The clause states:

> This policy also covers loss of or damage to the property insured occasioned through the acceptance by the Insured or Insured's agent or customers or consignees or others of Fraudulent Bills of Lading or Shipping Receipts.

Thus, for there to be coverage under the clause, Litho 21 was required to show that (1) the insured property was lost or damaged; (2) the bill of lading was fraudulent; and (3) the loss or damage was caused by the fraudulent bill's acceptance. Assuming without deciding that there was a loss of or damage to the Heidelberg printing press, there are no facts which even sug-

gest that the bill of lading was fraudulent or that its acceptance caused the harm.

First, Litho 21 did not show that the bill of lading issued by A. Hartrodt (UK) Ltd. was drafted inaccurately with the specific intent to deceive. At most, it merely alleged that the bill of lading might have been part of a fraudulent scheme by A. Hartrodt to substitute a different printing press. When and where precisely the shipper or, for that matter, anyone else in the commercial chain did or could have accomplished this during the press's sea voyage is not mentioned. Instead, Litho 21 lists all of the inaccuracies contained in the bill of lading and argues that these inaccuracies, given the circumstances, reveal fraud. We disagree. Simply because a fraud happened somewhere at sometime does not necessarily mean that the bill of lading was fraudulent, as it must be for coverage under the Fraudulent Bills of Lading Clause. Litho 21 had the burden of producing facts sufficient to raise a genuine issue as to the fraudulent nature of the bill of lading and the shipper's fraudulent intent. It did not do so.

Second, Litho 21 did not show that any purported loss of or damage to the insured property was caused by the acceptance of the bill of lading, as is also required by the Fraudulent Bills of Lading Clause. Litho 21 asserts that the press it received was severely worn, rusted, and fire-damaged. There is utterly no indication, however, that this damage occurred because of any inaccuracies much less any fraud in the bill of lading, and it appears that the deficiencies in the press preexisted the issuance of the bill of lading by A. Hartrodt. Indeed, the serial number on the bill of lading was that of the defective press.

Because Litho 21 failed to articulate facts sufficient to invoke coverage under the Fraudulent Bills of Lading Clause, we

will affirm the judgment of the District Court.