**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1603-20

THOSE CERTAIN
UNDERWRITERS AT LLOYDS,
LONDON SUBSCRIBING TO
POLICY NO. LC150811,

     Plaintiff-Respondent,

v.

NEW STREET AREA
DEVELOPMENT, LLC,

     Defendant-Appellant,

and

JOHN BRATTOLI,

     Defendant.

_____

Submitted February 15, 2022 – Decided March 1, 2022

Before Judges Fisher, Currier, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3274-20.

Delany Law, PC, attorneys for appellant (Douglas C. Maute, on the briefs).

Fleischner Potash, LLP, attorneys for respondent (Adam P. Stark and Kirsten J. Orr, on the brief).

PER CURIAM

New Street Area Development, LLC, is the named insured in a commercial liability policy issued by Certain Underwriters at Lloyds, London (the Underwriters), who commenced this declaratory judgment action. The Underwriters obtained a summary judgment declaring they have no duty to defend or indemnify New Street in a separate personal injury suit commenced by the guardian of Wayeter T. Suarez based on the minor's alleged ingestion of lead. In appealing, New Street argues it was entitled to summary judgment because, among other things, another judge ruled in its favor on the same issue in another suit. We find no merit in New Street's arguments and affirm.

Because the main thrust of New Street's appeal arises from what it believes are the appropriate consequences of an interlocutory ruling in another case, it is necessary that we consider what occurred in the prior action. In 2016, the guardians of Damian Franco commenced a suit in Middlesex County alleging Damian ingested lead while a tenant at one of New Street's rental properties in New Brunswick. In 2019, New Street filed a third-party complaint against the

Underwriters, alleging they were obligated to defend and indemnify. The Underwriters filed an answer and disputed any obligation to defend or indemnify because the policy contained a lead contamination exclusion.

New Street and the Underwriters cross-moved for summary judgment. The Middlesex motion judge granted New Street's cross-motion and held the Underwriters had a duty to defend and indemnify New Street. The Underwriters moved for reconsideration, but that motion was never heard because Franco's claim was settled shortly before the motion's return date.

Shortly before the summary judgment ruling and the settlement in the Franco matter, Wayeter Suarez's guardian commenced suit against New Street alleging he too ingested lead while a tenant in a New Brunswick rental property owned by New Street. New Street demanded that the Underwriters defend and indemnify in the Suarez matter. The Underwriters denied coverage and advised they would commence a declaratory judgment action; they also advised they would provide a defense to protect New Street's interests but only until the conclusion of the declaratory judgment matter.

The Underwriters then filed this action in Bergen County seeking a determination that the lead contamination exclusion negated any obligation they had to defend or indemnify New Street. The parties cross-moved for summary

3

judgment, and Judge Rachelle L. Harz granted the Underwriter's motion and denied New Street's for reasons expressed in a written opinion.

New Street appeals, arguing the judge erred in refusing to give preclusive effect to the summary judgment entered in its favor in the Middlesex matter and in finding the policy and the lead contamination exclusion were unambiguous and favored the Underwriters' view of their obligations. New Street also argues in a third point that the judge erred in rejecting its claims of bad faith and for punitive damages; we need not discuss this third point because, for the reasons that follow, we find no merit in New Street's first and second points. Indeed, we affirm substantially for the reasons set forth by Judge Harz in her thorough and well-reasoned written decision. We add only the following comments.

I

New Street argues in its first point that the judge was bound by the law of the case doctrine and was, therefore, required to adhere to the Middlesex decision on the coverage issue or that the Underwriters should have been collaterally estopped from seeking a different result in this second suit. We disagree in both respects.

Although the doctrines of law of the case and collateral estoppel are similar in that they share the goal that courts should not endure unnecessarily

repetitive litigation, State v. K.P.S., 221 N.J. 266, 277 (2015), they apply in different circumstances. The law of the case doctrine is a non-binding, discretionary standard intended to "prevent relitigation of a previously resolved issue," In re Est. of Stockdale, 196 N.J. 275, 311 (2008), in the same case in which the attempt to relitigate was made, K.P.S., 221 N.J. at 277. For that reason, as Judge Harz observed, the law of the case doctrine could not bar the Underwriters' pursuit of a declaratory judgment in this separate action.

The doctrine of collateral estoppel is applied to bar relitigation of an issue that has been fully and fairly litigated between the same parties, or those in privity with a party to the earlier proceeding, in subsequent litigation, id. at 277-78, and requires, as the Court held in Allen v. V & A Bros., Inc., 208 N.J. 114, 137 (2011) (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006)), that the party seeking application of collateral estoppel demonstrate:

- the issue is identical to a decided issue in an earlier proceeding;

- the issue was "actually litigated" in the prior proceeding;

- a final judgment on the merits was rendered in the prior proceeding;

- the determination of the issue "was essential to the prior judgment"; and

5

- "the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding."

Most of these factors were met here. The parties here were parties in the Middlesex case, so the privity question need not be examined. Their dispute about coverage in the Middlesex matter was no different than the dispute about coverage in the Suarez matter. And the enforceability of the lead contamination exclusion was critical to both dispositions.

But the critical third factor is clearly absent. The summary judgment ruling on the third-party action in the Franco matter did not conclude the case, since Franco's claim against New Street was still pending. And, when the Underwriters sought reconsideration, they did not get a ruling because Franco's claim was settled. And, according to the parties' submissions, a friendly hearing remains to be scheduled. Trial-court finality presupposes a final disposition of all issues as to all parties. See Grow Co. v. Chokshi, 403 N.J. Super. 443, 457-58 (App. Div. 2008). By the time Judge Harz ruled on the cross-motions for summary judgment, finality had not been achieved in the Franco matter. Without finality in the earlier matter, the Underwriters were unable to file an appeal of the summary judgment entered against them. Simple fairness allowed them to continue litigating its obligations to New Street until finality was achieved and

the right to appeal finally triggered. In that circumstance, it would have been inequitable to bind the Underwriters in this action to an interlocutory ruling in the pending earlier action.

II

New Street's argument on the merits of the coverage dispute is equally unavailing. Summary judgment in favor of the Underwriters was based on the policy's lead contamination exclusion, which declares that "[t]he insurance does not apply" to bodily injury and personal injury claims, among others, "arising out of the ingestion, inhalation or absorption of lead in any form." There is no doubt that Suarez's claim falls within those unambiguous terms and that coverage is excluded.

Despite the clear and unambiguous language of the exclusion, New Street argues that the placement of the exclusion more than thirty pages into the policy without a clearer expression in the declaration sheet or at some earlier location in the policy about the exclusion's presence, somehow precludes its application. We disagree.

The declaration sheet expressly states there are other forms and exclusions within the depths of the entire policy and lists them. The lead contamination exclusion is listed, albeit without the word "lead" appearing in its place on the

7

list. But we see nothing in our jurisprudence that would impose a requirement on insurers to identify all policy exclusions with perfect precision in such a listing or that there be a full expression about the exclusion on the declaration sheet. Indeed, the Supreme Court recognized in <u>Zacarias v. Allstate Ins. Co.</u>, 168 N.J. 590, 603 (2001), the trouble that would follow if the approach urged by New Street were followed:

> [A]n insurance contract is not <u>per se</u> ambiguous because its declaration sheet, definition section, and exclusion provisions are separately presented. A rule of construction forcing insurers to avoid all cross-referencing in policies would require them to reprint the entire definition section on each page of the policy, or to define each term every time it is used. That proliferation of fine print would itself demand strenuous study and run the risk of making insurance policies more difficult for the average insured to understand.

There is nothing ambiguous about the exclusion's text nor is there anything confusing about its location in the policy. Nor is there any ambiguity or confusion about the overall presentation of the policy's terms. The declaration page succinctly provided the dates and amount of coverage and indexed the other relevant terms, including the exclusion in question. The lead contamination exclusion itself bears a heading in capital letters that distinguishes it from other exclusions and clearly identifies its purpose. And its text leaves no doubt that

8

claims like Suarez's are excluded from coverage. This general approach – separately presenting a declaration sheet, a definition section, following by other terms and exclusions – is time-honored and does not in and of itself generate an ambiguity. <u>Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.</u>, 229 N.J. 196, 207-08 (2017) (recognizing that "the separate presentation of an insurance policy's declarations sheet, definition section, and exclusion section" does not "necessarily give rise to an ambiguity"); <u>Zacarias</u>, 168 N.J. at 601 (same).

In addition, the exclusion's text is neither "overly technical" nor does it contain "hidden pitfalls," the relevant terms are capable of being "understood without employing subtle or legalistic distinctions," and nothing is "obscured by fine print" or requires "strenuous study to comprehend." <u>Ibid.</u>

* * *

Finding no principled reason for the application of the law of the case or collateral estoppel doctrines, and finding no ambiguity in the policy exclusion or confusion in its location or, for that matter, the overall presentation of the policy's terms, we affirm the summary judgment entered in the Underwriters' favor.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-1603-20