P. R. DeBELLIS ENTERPRISES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. LUMBERMEN'S MUTUAL CASUALTY COMPANY, AN ILLINOIS CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 12, 1977—Decided October 11, 1977.

Before Judges CONFORD, MICHELS and PRESSLER.

*Mr. Aaron Dines* argued the cause for appellant (*Messrs. Lordi, Imperial & Dines,* attorneys).

*Mr. Allan Maitlin* argued the cause for respondent (*Messrs. Feuerstein, Sachs & Maitlin,* attorneys).

The opinion of the court was delivered by

CONFORD, P. J. A. D.  The question on this appeal is whether a fire insurance policy procured by plaintiff from defendant on certain improved real property in Caldwell is avoidable, after a fire loss, for lack of an insurable interest in plaintiff.  Plaintiff appeals from an adverse determination on the point by the Law Division.

On April 19, 1974 the Federal Government held a public auction of the property for unpaid federal taxes pursuant to 26 *U. S. C. A.* § 6335 *et seq.*  Plaintiff submitted, and the Government accepted, a bid of $5,000 for the property, and a certificate of sale was issued to plaintiff on May 7, 1974.  Its rights thereunder were subject to any liens on the property prior in rank to that of the Government, but the present record does not reflect the extent of such encumbrances aside from some $33,000 in municipal tax liens.  Under the federal statute the property was redeemable by the owner within 120 days after sale by payment of the amount tendered by the purchaser plus interest at the rate of 20% a year. *Id.,* § 6337(b).  Absent such redemption the purchaser would become entitled to a Government deed for the property. *Id.,* § 6338(b).

Plaintiff entered into possession of the property upon receiving the certificate. On May 9 he purchased a multi-peril policy on the property from defendant in the amount of $160,000, paying an annual premium of $1,413. On July 14, 1974 the premises were totally destroyed by fire. About a week after the fire the property was redeemed by the owner. Nonetheless, plaintiff submitted a claim to defendant for the full $160,000 coverage, which was refused.

Plaintiff instituted the present action on the policy. A variety of initial defenses submitted by defendant was reduced, at trial, to the single one of absence of insurable interest. The trial court found for defendant, deeming itself bound to do so by the decision of our Supreme Court in *Flint Frozen Foods, Inc. v. Firemen's Ins. Co. of N. J.*, 8 *N. J.* 606 (1952) .("*Flint*" hereinafter). Whatever interest plaintiff had in the property was held terminated upon the redemption by the owner. That event discharged what was, in effect, no more than a lien for $5,000 plus statutory interest, and precluded plaintiff from asserting he had sustained the necessary "loss" from the fire essential to found a claim under a fire insurance policy. *Flint, supra*, 8 *N. J.* at 610.

We incline to the view that under rather liberal concepts long held as to the nature of an interest in property which will constitute an insurable interest for fire insurance purposes, plaintiff possessed an insurable interest in the property when it took out the policy. *Flint, supra*, 8 *N. J.* at 612; *Hyman v. Sun Ins. Co.*, 70 *N. J. Super.* 96, 99–101 (App. Div. 1961). The interest of plaintiff under the instant certificate of sale seems fairly comparable to that of the holder of a tax sale certificate issued under state law. See *Gasorek v. Gruber*, 126 *N. J. Super.* 511, 515 (App. Div. 1974); *Manning v. Kasdin*, 97 *N. J. Super.* 406, 417 (App. Div. 1967), certif. den. 51 *N. J.* 182 (1968). The holder of a tax sale certificate has elsewhere been determined to have an insurable interest. *Hight v. Maryland Ins. Co.*, 69 *S. Dak.* 320, 10 *N. W.* 2d 285, 287 (Sup. Ct. 1943); and see, 4 *Appleman, Insurance* (1969), § 2184 at 98–99.

The general rule is that presence of an insurable interest as of the time of the casualty insured against is determinative of the right of the policy holder to recover on the policy. 4 *Appleman, supra,* § 2122 at 30–31. However, as developed at length in *Wolf v. Home Ins. Co.,* 100 *N. J. Super.* 27, 32–36 (Law Div. 1968), aff'd o. b. 103 *N. J. Super.* 357 (App. Div. 1968), there is a division among the American jurisdictions as to whether the holder of the policy loses the right to claim a "loss" by virtue of the casualty if, subsequent thereto, by reason of collateral agreements or events, the insured is saved from any actual pecuniary loss. The majority rule is that the latter circumstance is irrelevant so long as an insurable interest existed at the time of the casualty. In *Wolf* the court applied the majority rule, allowing recovery on a fire policy to a fee owner of realty notwithstanding that, prior to the fire loss, the owner had entered into an executory contract of sale to an intending condemnor and the vendee had entered into possession, consummating the sale by a closing of title held after the fire loss without any abatement of the purchase price.

We regard the present case as closer to *Flint.* There plaintiff owed one Einhorn's, Inc. $13,461.99, evidenced in part by warehouse receipts for groceries. Einhorn's obtained from defendant insurer a fire policy on groceries in the warehouse for an amount "not exceeding $10,000." Thereafter a fire destroyed the groceries. Before the fire plaintiff had paid Einhorn's $8,593.88, and about a month after the fire paid them $5,400 more and took from Einhorn's an assignment of the claim on the policy and accepted surrender of the warehouse receipts and promissory notes evidencing the original debt. Plaintiff sued on the assigned insurance claim and recovered $10,000. The Supreme Court reversed. It held that the policy by its terms insured Einhorn's only to the extent of its interest in the property. That interest having been only as a secured creditor of plaintiff, and plaintiff having paid off the debt, Einhorn's had suffered no loss. Recovery was precluded under the policy terms which expressly disallowed

any recovery "for more than the interest of the insured." 8 *N. J.* at 610. The court found this result consonant with "the fundamental principle of all insurance on property that the policy is a contract of indemnity." *Ibid.*

It may be questioned whether *Flint* represents a sound economic or insurance result. The insurance company was paid a premium for a calculated risk, and a loss was actually sustained, whether by Einhorn's or plaintiff. The loss was allocated contractually to plaintiff for purposes of the insurance claim by the latter parties. However, we are bound by *Flint,* as a decision of our Supreme Court, to the extent that it holds that a lienor loses his insurable interest when, subsequent to the fire insured against, his lien is fully paid. The interest of plaintiff in the case at bar is much closer in character to that of the secured creditor in *Flint* than it is to the owner of the fee involved in *Wolf, supra.* Moreover, the disadvantage, under *Flint,* of the uncertainty of the claim for an indefinite period of time after the casualty, is obviated here. The rights of plaintiff would be settled by the occurrence of redemption or by the expiration of the 120-day period without redemption.[1]

Affirmed; no costs.

---

[1] The situation of a tax sale certificate holder, contrastingly, is one involving a much larger period of uncertainty over the ultimate incidence of redemption by the owner.

Plaintiff has not made an alternative claim for return of premium. Our holding here implies no view concerning the merits of a demand for whole or partial return of premium in such circumstances.