**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3033
_____

PETER A. TUCCI, JR., ESQ.,
Executor for the Estate of Peter A. Tucci, Sr.,
Appellant

v.

HARTFORD FINANCIAL SERVICES GROUP;
TWIN CITY FIRE INSURANCE COMPANY;
JOHN DOES (1-10), fictitious names j/s/a;
THE HARTFORD CASUALTY INSURANCE COMPANY

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 08-4925)
District Judge: Hon. Jerome B. Simandle

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 19, 2012

_____

Before: AMBRO, GREENAWAY, JR., and TASHIMA,[*]Circuit Judges

(Filed:  December 19, 2012)

_____

[*]  Hon. A. Wallace Tashima, Senior Judge, United States Court of Appeals for the Ninth
Circuit, sitting by designation.

———————————

OPINION

———————————

TASHIMA, <u>Circuit Judge</u>.

The estate of Peter A. Tucci, Sr.[1], owns a parcel of land and buildings thereon, all of which are insured by defendant-appellee The Hartford Casualty Insurance Company ("Hartford"). Tucci claims that Hartford breached its insurance contract by refusing to compensate him for the loss of various movable furnishings and trade fixtures that were removed from the premises shortly before Tucci reclaimed possession from his commercial tenants, operators of a hotel and restaurant.

Tucci raises three contentions on appeal. First, he argues that the District Court erred in concluding that he is not entitled to coverage for the removed items under the unambiguous language of his "Business Personal Property" policy provision. Second, he contends that the court erred in concluding that he did not have a "reasonable expectation" of coverage for the removed items. Finally, he argues that the District Court erred in concluding that he did not have an "insurable interest" in the removed items.[2]

---

[1]    This case was brought by Peter A. Tucci, Sr., who died during the pendency of this appeal. We then substituted the Executor of his estate as appellant. For simplicity, we refer to appellant as "Tucci."

[2]    We do not consider Tucci's new argument, raised for the first time in his reply brief, that the removed items may be covered under the "Property of Others" provision of his Property Choice Coverage Form. *See In re Surrick*, 338 F.3d 224, 237 (3d Cir. 2003) ("[T]o the extent that [the] reply brief may be read to [raise a new issue], we conclude that [the] failure to identify or argue this issue in [the] opening brief constitutes waiver of this argument on appeal.").

2

We conclude that the removed items are not covered under the policy because Tucci has failed to show that he either owned the items or exercised care, custody, or control over them. We therefore will affirm the grant of summary judgment in favor of Hartford.

## I.

The District Court had jurisdiction under 28 U.S.C. §§ 1332, 1441. We have jurisdiction under 28 U.S.C. § 1291. Our standard of review is by now familiar:

> We exercise plenary review over a district court's summary judgment ruling. We apply the same standard as the District Court: "Summary Judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

*Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007) (alteration in original) (citation omitted)).

## II.

Because we write primarily for the parties, who do not materially dispute the District Court's recitation of the factual and procedural background, *see Tucci v. Hartford Fin. Serv. Grp., Inc.*, 2011 WL 2555379, at *1-*9 (D.N.J. 2011), we summarize only those facts necessary to an understanding of our disposition.

This case concerns a parcel of land that has been in the Tucci family for decades and that has, for decades, been under lease to commercial tenants who built and operated

3

hotels on the land. *Id.* at *1. In 1999, the leaseholder, Northeast Hospitality Properties ("Northeast"), turned management and operational control over to a company called Vraj Brig PA, LLC ("Vraj Brig"). Vraj Brig owned the furniture and appliances (*e.g.*, beds and laundry machines) in the hotel. Vraj Brig also leased space in one of the buildings to a restauranteur. *Id.* at *2.

In 2005, Tucci initiated eviction proceedings against Northeast, in part because the latter failed adequately to insure the premises. Tucci was granted a judgment of possession of the hotel premises in July 2006, but the court subsequently stayed execution of its judgment, and the stay remained in effect through August 31, 2006. In mid-August, Vraj Brig offered to sell or lease its property – including all hotel furnishings and appliances – to Tucci; he refused. Tucci declined a similar offer from the restaurant-owner sub-tenant.

Vraj Brig and the restaurant owner proceeded to remove all furniture and movable fixtures from the hotel and restaurant by August 31, 2006. Tucci was seen on the premises while property was being removed from the hotel. He regained possession of the premises on September 1, 2006, when the sheriff executed the writ of possession. On that date, Tucci noticed that movable fixtures and furnishings had been removed from the hotel, and that the premises had been vandalized. He filed a claim with Hartford in October 2006. Tucci sought coverage for the loss of various items, including hotel beds, laundry machines, and HVAC[3] units that Vraj Brig had removed. Tucci's policy

---

[3] "HVAC" is the acronym for heating, ventilating, and air conditioning.

4

provided coverage for "business personal property," defined as "[p]ersonal property owned by others, that is in your care, custody or control," and excluding property "[o]wned by your tenants."

Hartford offered to pay Tucci a sum of money on the condition that he sign an "undisputed proof of loss" statement; he refused. Tucci also refused Hartford's proposal that the parties submit their dispute for appraisal as was, according to Hartford, mandated by the insurance policy. This litigation ensued.

The District Court granted Hartford's motion for summary judgment, holding that Tucci's "business personal property coverage is limited to those items of property that fit within the ordinary meaning of the definition of 'covered property' in his policy, which excluded property owned by residents or tenants of the Plaintiff." *Tucci*, 2011 WL 2555379, at *13. The District Court expressly disclaimed any ruling on the question of whether Tucci actually owned the removed items. *Id.* at *13 n.4 ("The Court's ruling on this issue is not declaring the ownership status of any particular item of property, but is merely stating that, as a matter of law, Plaintiff's business personal property does not include items of property owned by residents or tenants of Plaintiff, pursuant to the terms of his policy."). Tucci timely appealed.

## III.

### A. *"Business Personal Property" Coverage*

Tucci does not argue that his policy plainly covered the movable furniture and

trade fixtures that were removed from his land,[4] and the policy's "Business Personal Property" provision plainly does not contemplate coverage for items that were neither owned by Tucci nor under his care, custody, or control. The policy defines "Business Personal Property" as:

> (a) All of Your Business Personal Property owned by your business; and
>
> (b) Personal property owned by others, that is in your care, custody or control (including leased property as provided in written lease agreement);
>
> all while located at the premises address as shown in the Scheduled Premises section of the Property Choice Declarations.

New Jersey law[5] treats insurance policies as contracts, and interprets policies by first giving effect to the plain and ordinary meaning of words therein. *See Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001). The District Court concluded that Tucci's "business personal property does not cover property that does not belong to the insured and that is not in his care, custody and control," *Tucci*, 2011 WL 2555379, at *19, and that those losses were not "covered under the unambiguous language of Plaintiff's policy," *id.* at *10. We agree. Tucci has not established ownership of the removed items as between himself and the nonparties that purchased these items, Vraj Brig and the

---

[4]     By contrast, Tucci does contend that he had a "reasonable expectation" of coverage for the removed items, as well as an "insurable interest" in the items. These contentions are addressed in Parts III.*B* and *C, infra.*

[5]     No one disputes that New Jersey law applies in this diversity action involving insurance coverage for property situated in New Jersey.

restaurant owner.[6] He has also offered no evidence to suggest that he exercised "care, custody or control" over the removed items, as that term is generally understood by New Jersey courts in the context of insurance contracts.

*1.      Ownership of the Removed Items*

Tucci claims that he owned the furniture and other removed items by operation of his lease agreement with Northeast. Under the heading "Surrender at End of Term," the lease provides in relevant part:

> On the last day of the term hereof or on the earlier termination thereof, Tenant shall peaceably and quietly leave, surrender and deliver up to Landlord the demised premises, together with any buildings or structures erected thereon and all alterations, changes, additions and improvements which may have been made upon the premises *(except movable furniture or movable trade fixtures put in at the expense of Tenant)*, in thorough repair and good order and safe condition. Tenant, on or before said date, shall remove all of Tenant's personal property from the demised premises, and all *property not so removed shall be deemed to have been abandoned* and may be appropriated, sold, stored, destroyed or otherwise disposed of by Landlord without notice to Tenant and without obligation to account therefor. . . . In the event that this lease is cancelled or terminated by Landlord by notice pursuant to any provision hereof *Tenant shall have thirty (30) days after the giving of such notice to remove all of Tenant's personal property and movable trade fixtures* from the premises.

(Emphases added.)

Tucci contends that he gave effective notice of termination by October 2005, at the

---

[6]      Tucci denies that Vraj Brig and the restaurant owner purchased the removed items but, as the District Court observed, he has offered no contrary evidence to support this contention and, hence, has failed to create a genuine issue of material fact as to the original ownership of the items. *See Tucci*, 2011 WL 2555379, at *2 n.2.

latest, and therefore had ownership over the items removed by Vraj Brig and the restaurant owner in August 2006. But nothing in the record indicates that the question of legal title to these items as between Tucci and the nonparties (the property manager, Vraj Brig, the restaurant owner, and, perhaps, even the leaseholder, Northeast) has been determined or settled. As such, the District Court rightly skirted the question of legal ownership.[7]

### 2. Care, Custody, or Control over the Removed Items

Property owned by others, but in Tucci's "care, custody or control" is covered by the plain language of the Business Personal Property provision. Tucci contends that the hotel and its contents were in his care, custody, and control as of July 21, 2006, when the state court entered a judgment of possession of the premises in his favor, and that the items removed in August 2006 were therefore covered as business personal property. But Tucci's relationship with the items does not meet New Jersey's standard for "care, custody or control."

New Jersey courts have had ample occasion to interpret "care, custody or control" policy provisions in the context of coverage exclusions for damage to property within the insured's care, custody, or control. Almost all liability insurance policies contain such exclusions, and some jurisdictions (including New Jersey) hold that "possessory, not

---

[7]  The District Court explained that its "ruling on this issue is not declaring the ownership status of any particular item of property, but is merely stating that, as a matter of law, Plaintiff's business personal property coverage does not include items of property owned by residents or tenants of Plaintiff, pursuant to the terms of his policy." *Tucci*, 2011 WL 2555379, at *13 n.4.

merely proprietary, control is required" to constitute care, custody, or control over property. 3 Insurance Claims and Disputes § 11:18 & n.6 (citing *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 678 A.2d 1152, 1162 (N.J. Super. Ct. App. Div. 1996)); *see Condenser Serv. & Eng'g Co. v. Am. Mut. Liab. Ins. Co.*, 155 A.2d 789, 792 (N.J. Super. Ct. App. Div. 1959) ("The word 'control' as used in the exclusionary clause contemplates possessory handling, not proprietary control.").

Although it appears that Tucci had proprietary control over the hotel in August 2006 (when the items were removed) as a consequence of the state court judgment of possession in his favor issued the prior month, it is undisputed that, because of the stay, Tucci did not take actual physical possession of the premises until September 1, 2006. This and other undisputed facts concerning Tucci's dealings with the premises and its occupants in the weeks leading up to removal of the items illustrate that Tucci cannot meet the physical control component of "care, custody or control."

The parties do not dispute that the tenant Northeast, the property manager Vraj Brig, and the restaurant owner remained in physical possession of the premises (and hence its contents) until August 31, 2006. It is further undisputed that, not only was Tucci not allowed to take physical possession of the building prior to September 1, 2006, he was also subject to a court order that barred "destruction, disposal or sale of any property at the leased premises that is not in the ordinary course of business of the motel." That order was extended through August 31, 2006). Tucci's relationship with the premises (and its contents) was therefore nowhere near the sort of "exclusive" physical

9

control necessary to show "care, custody or control." *Cf. Condenser*, 155 A.2d at 792. Given these undisputed facts, Tucci cannot prevail under a "care, custody or control" theory.

B.    *"Reasonable Expectation" of Coverage*

Tucci argues that he has a reasonable expectation of coverage for the removed items under the "Business Personal Property" provision of his policy. We do not reach this question because the contract language is unambiguous, and unambiguous insurance contracts are generally not subjected to a "reasonable expectation" analysis. Tucci's argument therefore flounders and leads us back to the plain language of the policy which, as discussed above, does not entitle him to the coverage he seeks.

1.    *"Reasonable Expectation" Doctrine*

Where an insurance contract is ambiguous, New Jersey courts invoke the "reasonable expectation" doctrine so that the language can be interpreted in a manner that "comport[s] with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Zacarias*, 775 A.2d at 1264. Not surprisingly, the threshold inquiry is whether the contract is in fact ambiguous. Only in exceptional cases involving terms that violate public policy, such as terms that would virtually nullify insurance coverage if taken literally, are unambiguous insurance contracts interpreted so as to conform with the reasonable expectations of the insured. *See, e.g., Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*, 21 A.3d 1151, 1157-58 (N.J. 2011); *Zacarias*, 775 A.2d at 1264; *Gibson v. Callaghan*, 730 A.2d 1278, 1283 (N.J.

10

1999); *Sparks v. St. Paul Ins. Co.*, 495 A.2d 406, 414 (N.J. 1985); *Kievit v. Loyal Protective Life Ins. Co.*, 170 A.2d 22, 26, 30 (N.J. 1961).

The policy interests that animate this doctrine are not implicated here, and Tucci has not argued that literal enforcement of the contract would offend New Jersey's broader interest in avoiding injury to the insured public. Moreover, a literal reading of the "Business Personal Property" provision would not render the policy valueless because Tucci would still enjoy coverage for all furniture and equipment utilized in the hotel following his repossession of the premises. This is therefore not an exceptional situation warranting deviation from the plain language of the policy. Rather, the general rule applies: only ambiguous policy terms should be read so as to effectuate an insured's reasonable expectations. And, as we shall see, the plain language of the "Business Personal Property" provision is not ambiguous under New Jersey law.

*2.    The "Business Personal Property" Provision*

An insurance policy is ambiguous if it is "overly complicated, unclear, or written as a trap for the unguarded consumer," *Passaic Valley*, 21 A.3d at 1158 (quoting *Zacarias*, 775 A.2d at 1270) (internal quotation marks omitted)), or if its phrasing is "so confusing that the average policyholder cannot make out the boundaries of coverage." *Id.* (quoting *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001) (internal quotation marks omitted)). We also "consider whether clearer draftsmanship by the insurer would have put the matter beyond reasonable question." *Id.* The "Business Personal Property" provision is not ambiguous under this standard.

11

Appearing on the first page of the "Property Choice Coverage Form," the "Business Personal Property" provision states in pertinent part:

1.      Covered Property

\*    \*    \*

b.      Business Personal Property

(1) Business Personal Property means:

      (a)     All of Your Business Personal Property owned by your business; and

(b)     Personal property owned by others, that is in your care, custody or control (including leased property as provided in written lease agreement);

all while located at the premises address as shown in the Scheduled Premises section of the Property Choice Declarations.

(2) Business Personal Property includes:

(a)     Furniture, fixtures, machinery and equipment;

\*    \*    \*

      (g)     "Tenant Improvements and Betterments";[8]

---

[8]    This term is defined elsewhere in the policy as:

fixtures, alterations, installations or additions made a part of the Building you occupy but do not own; and:

a.     Made at your expense; or

b.     You acquired from the prior tenant at your expense; and you cannot legally remove.

*   *   *

2.      Property Not Covered

Covered Property does not include the following:

*   *   *

c.      Business Personal Property does not include property:

(1) Owned by and for exclusive personal use by you or your officers, members, partners or employees;

(2) Owned by your residents, patients, or students; or

(3) Owned by your tenants.

*   *   *

The only undefined and arguably unclear term appearing in this text is "care, custody or control." As we have stated, this is a term common to virtually all insurance policies; it is not an obscure term of art and it is not "so confusing that the average policyholder cannot make out the boundaries of coverage." *Passaic Valley*, 21 A.3d at 1158 (internal quotation marks omitted).

Any ambiguity in Tucci's coverage for the removed items arises not from the language of his policy, but as a result of the uncertainty surrounding legal ownership of the removed items. But Tucci cannot prevail under a "reasonable expectation" theory

Tenant Improvements and Betterments includes fences, signs, and radio or television towers, antennas and satellite dishes (including attached equipment).

13

because, as an initial matter, there is no reason for this Court to ignore the plain and unambiguous language of his policy.

*C.      Insurable Interest*

Tucci's leading argument on appeal is that, even if he did not own the removed items, he had an "insurable interest" in them, entitling him to coverage**.**  The argument is misplaced and demonstrates a misunderstanding of the law.  Our decision turns on whether the language of Tucci's policy actually *insured* the removed items, not whether his interest in those items was *insurable*.

The presence (or absence) of an insurable interest goes to the validity of an insurance contract, not to the existence of coverage for a particular item of property.  Thus, it is said that "[a]n insurable interest is necessary to the validity of an insurance contract, whatever the subject matter of the policy," and that "[i]f there is no insurable interest the contract is void, and unenforceable." 44 Am. Jur. 2d *Insurance* § 933 (2012).  "The justification for this rule," as the New Jersey Supreme Court observed, "is the discouragement of illicit uses of insurance, such as wagering, and the destruction of insured property." *Miller v. N.J. Ins. Underwriting Ass'n*, 414 A.2d 1322, 1324 (N.J. 1980).

In light of this purpose, it is unsurprising that the insurable interest doctrine is generally raised by insurers as a defense against coverage.  *See id.* at 1326 (holding that

14

the insureds, former record owners of real property damaged in a fire, retained insurable interests and could recover under their policies "[t]o the extent that [they] can establish that their interests have a pecuniary value"); *Miller v. N.J. Ins. Underwriting Ass'n*, 457 A.2d 23, 25 (N.J. Super. Ct. App. Div. 1983) (recounting the procedural history of *Miller* and explaining that, at trial, the defendant-insurer "alleged that plaintiffs had no insurable interest in the subject property at the time of the loss"); *P.R. DeBellis v. Lumberman's Mut. Cas. Co.*, 379 A.2d 64, 65 (N.J. Super. Ct. App. Div. 1977) (explaining that the defendant-insurer's defense at trial was the "absence of insurable interest"), *rev'd*, 390 A.2d 1171, 1177 (N.J. 1978) (holding that the plaintiff-insured, the purchaser of IRS-seized property, later redeemed by its prior owner and destroyed in a fire, retained an insurable interest in the property); *Balentine v. N.J. Ins. Underwriting Ass'n*, 966 A.2d 1098, 1100 (N.J. Super. Ct. App. Div. 2009) (explaining that, at trial, the defendant asserted that the plaintiff "had no insurable interest in the covered property"); *Hyman v. Sun Ins. Co.*, 175 A.2d 247, 248 (N.J. Super. Ct. App. Div. 1961) ("The defendant refused to pay the fire loss, contending that the plaintiff did not have an insurable interest in the property at the time of the loss.").

Whether Tucci has an insurable interest is of no moment. Even if we assume that he had an insurable interest in the removed items, Tucci still cannot recover for their loss without first demonstrating that his policy covers those items and, as we have explained,

15

that is something he cannot do under the undisputed facts.

For the foregoing reasons, the judgment of the District Court will be affirmed**.**